CRAIN, J.
Ijn this workers’ compensation proceeding, the employer, Gaten’s Adventures Unlimited, L.L.C., appeals a judgment in favor of the employee, Julia Bridges. At issue on appeal is whether the evidence sufficiently established the following: (1) Bridges was in an accident that caused injuries covered by the workers’ compensation act, (2) Bridges was temporarily totally disabled for several weeks after the accident, (3) Bridges is entitled to supplemental earnings benefits, and (4) awards of penalties and attorney fees are warranted because Gaten’s failed to pay disability and medical benefits without reasonably controverting the claim. Finding merit in Gaten’s challenges to the awards of disability benefits, we reverse those awards and reverse the award of penalties and attorney fees for the failure to pay those benefits. We affirm the separate award of penalties and attorney fees for Gaten’s failure to pay medical expenses and, in response to her answer to the appeal, award Bridges additional attorney fees on appeal.
FACTS
Bridges worked as a bus driver for Ga-ten’s on a part-time basis for $125 per day on assigned trips. The company advised drivers daily if their services were needed and assigned trips accordingly. On May 2, 2013, only a few months into her employment, Bridges drove a bus transporting junior high school students from Mande-ville to Lake Charles for a one-day field trip. The trip proceeded without incident until the group stopped for lunch while returning home.
After finishing her lunch, Bridges returned to the bus and was in the driver’s seat when the mother of a handicapped *997 student attempted to get the child back on the bus. The student’s mother removed the child from his wheelchair, but when she appeared unable to get him on the bus, Bridges positioned herself on the steps and took the child in her arms. As Bridges turned with the child, she felt a sharp pain in her lower back that extended down her right side. She did not mention the | spain to anyone on the bus and was able to drive the bus for the remainder of the trip. After unloading the passengers in Mandeville, Bridges returned the bus to Gaten’s office in Hammond, but the office was closed by the time she arrived.
Bridges returned to the office the following morning, a Friday, to submit her paperwork for the trip and to report the accident to her immediate supervisor, Preston Davis; however, she was unable to locate Davis. She waited about an hour and then left. During the weekend, Bridges continued to experience a sharp pain that extended down her right leg, so she went to the emergency room at Lallie Kemp Hospital on Saturday. According to Bridges, she told the triage nurse and the attending physician about her back pain and the accident on the bus. The doctor gave her a shot and some prescriptions for medication, which Bridges filled.
Bridges went to Gaten’s office the following Monday morning, four days after the accident, and reported the accident to Davis. According to Bridges, Clarence Gaten, the owner of the company, told her to go to the doctor, so she went to the emergency room at North Oaks Medical Center. She received another shot and additional prescriptions along with some paperwork; however, when she attempted to deliver the paperwork to Gaten’s, Davis advised her that she needed to contact the company’s insurance carrier. According to Bridges, Gaten’s did not provide her with any contact information for the insurance carrier.
Bridges sought treatment again that same week at North Oaks Clinic with Dr. Mark Daunis. She described how the pain began with the accident on the bus, and, after an examination, Dr. Daunis diagnosed her with a lumbar sprain. He cleared Bridges to return to work for “light duty” with “no stooping, twisting, bending, squatting” and “no pushing, no climbing ... [and] no duties where individual cannot take rest breaks.” Bridges returned to Dr. Daunis nine days later and reported that her pain was worse and the medications were not helping. Dr. Daunis recommended that she see an orthopedic surgeon. Approximately one |4month later, Bridges’ counsel forwarded a letter to Gaten’s self-insurance fund, LCTA Workers’ Comp, requesting authorization for Bridges to treat with a neurosurgeon, Dr. Lori Summers, but Bridges never received authorization for that treatment. Bridges did not return to Dr. Daunis and received no further medical treatment for any condition related to the accident on the bus.
Citing continued problems with her low back that prevented her from driving, Bridges did not return to work at Gaten’s, nor did she return to another job she held at that same time as a transport driver and mental health technician for Oceans Behavioral Hospital. She applied for unemployment benefits in July 2013, and certified that she was able to work and was seeking work. On July 9, 2013, approximately two months after the accident, she applied for a “sitting position” with Home Instead Senior Care and was hired shortly thereafter. After training for several weeks, Bridges received her first compensation from Home Instead in August 2013.
Bridges filed a workers’ compensation claim against Gaten’s seeking wage benefits, reimbursement of out-of-pocket medi *998 cal expenses, treatment by Dr. Summers, and an award of penalties and attorney’s fees. Gaten’s initially admitted that Bridges suffered an injury on the date alleged, but later answered alleging, in part, that Gaten’s was “continuing to evaluate and determine whether this is a com-pensable claim” arising out of “a work-related accident.”
At trial Bridges relied entirely on her own testimony and documentary evidence and presented no other witnesses in person or by deposition. Gaten’s presented testimony from its owner and two employees, but did not call any witness to dispute Bridges’ description of the accident or her injuries. At the conclusion of the trial, the workers compensation judge (WCJ) ruled for Bridges, awarding her temporary total disability benefits from the date of the accident | ^through August 15, 2013, supplemental earnings benefits thereafter, medical benefits, and penalties and attorney fees.
Gaten’s appealed and contends that the evidence does not establish that an accident occurred or, if it occurred, that it caused an injury covered by the workers compensation act (Act). Gaten’s also argues that the evidence did not establish that Bridges was temporarily totally disabled after the accident, or that she was entitled to supplemental earnings benefits. Finally, Gaten’s asserts that the WCJ erred in awarding penalties and attorneys fees. Bridges answered the appeal and seeks an award of attorney fees and costs incurred on appeal.
DISCUSSION

Accident and Injury Covered by Act

The primary issue in the first assignment of error is whether Bridges’ testimony, alone, was sufficient to satisfy her burden of proving that an accident occurred. In two related issues, we must determine whether the evidence adequately established that Bridges sustained an injury covered by the Act, and whether the accident caused that injury.
An employee in a compensation action must establish “personal injury by accident arising out of and in the course of his employment.” La. R.S. 23:1031 A. An accident is “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). As in other civil actions, the employee in a compensation action has the burden of establishing a work-related accident. Ardoin v. Firestone Polymers, L.L.C., 10-0245 (La.1/19/11), 56 So.3d 215, 218.
The employee’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or | ^asts serious doubt upon the employee’s version of the incident; and (2) the employee’s testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992); Vargas v. Petrin Corporation, 12-1212 (La.App. 1 Cir. 3/22/13), 115 So.3d 483, 487. Corroboration of the employee’s testimony may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. Ardoin v. Firestone Polymers, L.L.C., 10-0245 (La.1/19/11), 56 So.3d 215, 219. The fact-finder’s determinations as to whether the employee’s testimony is credible and whether she has discharged her burden of proof are factual determinations that should not be disturbed on appellate review unless clearly wrong or manifestly erroneous. Ardoin, 56 So.3d at *999 219. If the WCJ’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse. Ardoin, 56 So.3d at 219.
According to Gaten’s, Bridges failed to meet her burden of proof because evidence was presented that discredited her version of the accident and because her testimony was not sufficiently corroborated by circumstances after the accident. Gaten’s specifically points to Bridges’ failure to immediately report the incident and certain discrepancies in the history she provided to the attending nurses and physician at Lallie Kemp Hospital, as documented in the medical records. Under the applicable standard of review, we review the record to determine whether it contains a reasonable factual basis for the WCJ’s findings that Bridges’ testimony was not discredited and was sufficiently corroborated.
When asked at trial why she did not immediately report the incident by telephone, Bridges explained that she planned on reporting the incident that evening upon her return and that she wanted to make sure she was “going to be okay.” She testified that the group may have had to wait for hours for an exchange driver arid that waiting that long would have been “worse on the customers.” 17According to Bridges, company policy required her to report any accidents to her immediate supervisor. When Bridges completed the trip and returned the bus, the Gaten’s office was closed. The following morning, a Friday, she returned to report the accident, but her immediate supervisor, Preston Davis, was not in his office. Consequently, she left after being unable to locate Davis. On-Monday, she went to the office and Reported the accident to Davis.
Two days later on Wednesday, May 8, 2013, Bridges emailed a detailed account of the accident to Ayanna Jackson, the Director of Operations for Gaten’s. The timing of Bridges’ report of the accident did not cause Jackson to question whether the accident occurred.
An employee’s delay in reporting an injury can be corroborative of her initial unawareness of the seriousness of the injury, rather than cause to doubt her credibility about its occurrence. Bruno, 593 So.2d at 363; Vargas, 115 So.3d at 488. This is especially true when the delay is of a relatively short duration. See Bruno, 593 So.2d at 363 (two-week delay in reporting accident was not sufficient to discredit the employee); Vargas, 115 So.3d at 487-88 (employee’s delay of “several weeks” in reporting accident did not require overturning WCJ’s determination that employee was credible). Bridges reported her accident four days after it occurred and offered a reasonable explanation for the delay. This relatively short reporting delay does not render the WCJ’s credibility determination clearly wrong or manifestly erroneous.
Gaten’s also relies on discrepancies in the Lallie Kemp medical record concerning the history provided by Bridges when she was treated there two days after the accident. According to the triage section of the emergency room record, Bridges complained of “lower back pain [for] 3 days,” but the record contains no mention of an accident. Another nursing entry indicates the duration of the pain was “1 week,” while the attending physician noted that the pain had been present |sfor “2 weeks,” with a “gradual onset” that began at “home.” Bridges was cross-examined extensively about these discrepancies and steadfastly maintained that she told the nurses and doctor about the incident on the bus, emphasizing, “I don’t know what they [were] writing, but I know what I was saying.”
*1000 Despite these discrepancies in the Lallie Kemp medical record, the WCJ found Bridges to be credible. That credibility determination is entitled to great weight because the trier of fact “is in a superior position to observe the nuances of demeanor evidence not revealed in a record.” See Marange v. Custom Metal Fabricators, Inc., 11-2678 (La.7/2/12), 93 So.3d 1253, 1259. Although another fact finder may have made a different credibility determination and weighed the evidence differently, the WCJ was not clearly wrong in rejecting the attack on Bridges’ credibility. See Vargas, 115 So.3d at 488.
The record also reasonably supports the WCJ’s implicit finding that Bridges’ testimony was corroborated by circumstances following the alleged incident, the second element necessary to satisfy her burden of proof. See Bruno, 593 So.2d at 361; Vargas, 115 So.3d at 487. When Bridges first sought treatment at Lallie Kemp Hospital, an entry in the medical record reflects that she advised the triage nurse that the pain began three days earlier. Although off by one day, that history is largely consistent with an onset of pain beginning with the accident on the bus. The following Monday, Bridges reported the accident to her immediate supervisor arid presented for additional treatment at North Oaks Hospital. She then went to North Oaks Clinic, and those records contain a history of the accident that is consistent with the description given by Bridges at trial. Her trial testimony was also consistent with the description of the accident in the email she sent to Jackson about one week after the accident. Gaten’s did not attempt to discredit Bridges’ description of the accident with testimony from any possible witnesses of the accident, as no-one involved in the school field trip was called to testify at trial.
19Based upon our review of the record, the WCJ was not clearly wrong in finding that Bridges’ testimony was credible and adequately corroborated, and that she proved a work-related accident by a preponderance of the evidence. See Bruno, 593 So.2d at 357; Vargas, 115 So.3d at 488; Hayes v. Louisiana State Penitentiary, 06-0553 (La.App. 1 Cir. 8/15/07), 970 So.2d 547, 556, writ denied, 07-2258 (La.1/25/08), 973 So.2d 758; Barber Brothers Contracting Company, LLC v. Reilly, 03-1365 (La.App. 1 Cir. 2/23/04), 874 So.2d 194, 196; Elswick v. Highway Transport, 96-0014 (La.App. 1 Cir. 9/27/96), 680 So.2d 1364, 1367-68.
Gaten’s also argues that Bridges failed to prove that the accident produced “objective findings of an injury.” Gaten’s suggests that such proof is required by the Act, which pertinently defines “accident” as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). Although the definition references “objective findings of an injury,” our courts have not construed this provision as limiting the Act’s coverage solely to injuries producing objective findings. To the contrary, early in the history of the Act, courts rejected the notion that compensation is limited only to injuries producing “objective” symptoms, as illustrated by the following excerpt from Rochell v. Shreveport Grain & Elevator Co., 188 So. 429, 431 (La.App. 2 Cir.1939):
If the words “objective symptoms of an injury”, employed in the statute, were intended to mean or be construed to mean what, on their face, they imply, it is obvious that they have been read out of this definition by a multitude of *1001 adjudications by the appellate courts of this state and by the Supreme Court also. Nearly all strain injuries reveal no “objective” symptoms at the time of injury or thereafter.
See also H. Alston Johnson, 13 Louisiana Civil Law Treatise, Workers’ Compensation Law and Practice § 216 (5th ed.)
_[^Gaten’s argument narrowly focuses on the current definition’s similar reference to “objective findings.” However, this single phrase cannot be construed in isolation and must be interpreted in pari materia with other provisions of the Act governing the nature of compensable injuries. See La. Civ.Code art. 13; Fulmer v. State, Department of Wildlife and Fisheries, 10-2779 (La.7/1/11), 68 So.3d 499, 505. One of the stated purposes of the Act is to provide for the timely payment of benefits “to all injured workers who suffer an injury or disease” arising out of and in the course and scope of their employment. See La. R.S. 23:1020.1 B. By definition, an “injury” includes “injuries by violence to the physical structure of the body” and, in some circumstances, extends to mental injuries. See La. R.S. 23:1021(8)(a)-(d). The statutory definition of “injury” contains no requirement of objective findings or symptoms. Similarly, Louisiana Revised Statute 23:1317 A provides that “all compensation payments provided in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.” (Emphasis added.) As indicated by the disjunctive “or,” compensation payments are not limited only to injuries producing objective symptoms; the payments are also available for any injury “proven by competent evidence.” See La. R.S. 23:1317 A; see also La. R.S. 1:9. When construed in pari materia, these provisions do not support Gaten’s contention that Bridges was required to prove that she suffered an injury that produced objective findings or symptoms.
Gaten’s counters that a broad interpretation of the Act in favor of the injured employee is no longer permissible after the enactment in 2012 of Louisiana Revised Statute 23:1020.1. See 2012 La. Act No. 860, § 1. Gaten’s specifically cites Subpart 23:1020.1 D(2), which provides that “the laws pertaining to workers’ compensation shall be construed in accordance with the basic principles of | n statutory construction and not in favor of either employer or employee.” We have not resorted to a broad or liberal interpretation of the Act to arrive at our conclusion. Rather, we rely on the basic principle that “[ljaws on the same subject matter must be interpreted in reference to each other” and in a manner “that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it.” See La. Civ.Code art. 13; Fulmer, 68 So.3d at 505. Gaten’s assertion that Bridges had to prove that she sustained injuries with objective findings is without merit.
In its final argument in this assignment of error, Gaten’s contends that Bridges did not prove that her injuries were caused by the accident, because she had a previous history of back pain and treatment. Gaten’s also relies on the discrepancies in the Lallie Kemp emergency room record concerning the duration of her more recent symptoms.
An otherwise healthy employee with a preexisting condition is entitled to benefits if she can prove that her work-related accident contributed to, aggravated, or accelerated her injury. Louisiana Safety Association of Timbermen v. Carlton, 12-0775, (La.App. 1 Cir. 12/21/12), 111 *1002 So.3d 1076, 1083. When an employee proves that before the accident she had not manifested disabling symptoms, but commencing with the accident the disabling symptoms appeared and manifested themselves, and medical or circumstantial evidence indicates a reasonable possibility of a causal connection, the employee’s work injury is presumed to have aggravated or accelerated the preexisting infirmity or disease to produce her disability. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324-25 (La.1985); Ranzino v. Our Lady of the Lake Regional Medical Center, 13-1684 (La.App. 1 Cir. 6/18/14), 147 So.3d 765, 767, writ denied, 14-1540 (La.10/24/14), 151 So.3d 607.
hi>Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate, or combine with the pre-exist-ing disease or infirmity to produce the employee’s disability. Peveto v. WHC Contractors, 630 So.2d 689, 691 (La.1994). The application of this presumption and the determination of causation are factual issues subject to the manifest error standard of review. See Detraz v. Lee, 05-1263 (La.1/17/07), 950 So.2d 557, 563; Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 43 n. 3; Chauvin v. Terminix Pest Control, Inc., 11-1006 (La.App. 1 Cir. 6/28/12), 97 So.3d 476, 485.
Bridges testified that when she lifted the student and turned her body, she felt a “very sharp pain in my lower back down to my behind on my right side.” When the pain did not resolve over the next two days, she sought medical treatment at Lal-lie Kemp Hospital and, later that same week, at North Oaks Hospital and with Dr. Daunis, who diagnosed a lumbar sprain and referred to the condition as a “work related injury.” In a report to Gaten’s, Dr. Daunis was asked if the injury was possibly work-related, and he confirmed “Yes.” Although Bridges acknowledged that she had been diagnosed with low back pain or “sciatica” before the accident, she testified that she had not experienced symptoms in “a long time.” Consistent with that testimony, her medical records reflect that she did not receive any treatment for back pain for almost seven years before the accident on the bus.
Gaten’s produced no medical testimony or other evidence contradicting causation or Bridges’ claim of having been symptom free for several years preceding the accident. The defendant points only to Bridges’ prior treatment for back pain and the discrepancies in the Lallie Kemp medical record concerning the onset of her pain after the accident. Considering the entirety of the evidence, the | ^finding of causation by the WCJ is reasonably supported by the record and is not manifestly erroneous. Gaten’s first assignment of error is without merit.

Temporary Total Disability Benefits

Gaten’s next challenges whether Bridges sufficiently proved that she was entitled to temporary total disability benefits. A claimant seeking temporary total disability benefits bears the burden of proving, by clear and convincing evidence, that she is “physically unable to engage in any employment.” See La. R.S. 23:1221(l)(c); Iberia Medical Center v. Ward, 09-2705 (La.11/30/10), 53 So.3d 421, 432. The clear and convincing standard requires a party to prove the existence of a contested fact is highly probable, or much more probable than its non-existence. Iberia Medical Center, 53 So.3d at 432. Disability can be proven by medical and lay testimony. The fact finder must weigh all the evidence, medical and lay, in order to *1003 determine if the claimant has met his burden of proof. Bolton v. Grant Parish School Board, 98-1480 (La.3/2/99), 730 So.2d 882, 885 (per curiam). This factual finding should be given great weight and should not be overturned absent manifest error. Bolton, 730 So.2d at 885.
Bridges’ physical limitations were addressed in only one item of medical evidence: a report from Dr. Daunis, issued four days after the accident, wherein he imposed certain restrictions on Bridges but, significantly, confirmed that she could “Return to Work (Limited Duty)” or for “light duty.” Bridges conceded that she was never told by a doctor that she could not go back to any form of work as a result of her injury. She testified only that she could not perform her driving jobs at Ga-ten’s or Oceans, or attend an interview for a similar position with Greyhound. In a claim for unemployment benefits filed in July 2013, she certified that she could work and successfully applied for a position as a sitter that same month. No other evidence was offered as to the extent of Bridges’ alleged disability.
114An employee is not entitled to temporary total disability benefits if she can engage in light duty work. See Cooper v. St. Tammany Parish School Board, 02-2433 (La.App. 1 Cir. 11/7/03), 862 So.2d 1001, 1008, writ denied, 04-0434 (La.4/23/04), 870 So.2d 300; Thomas v. Wal-Mart, 02-1356 (La.App. 1 Cir. 5/9/03), 849 So.2d 592, 600; Callahan v. Wayne Matthews Construction, 01-0129 (La.App. 1 Cir. 2/15/02), 807 So.2d 1197, 1199. Given the uncontested evidence that Bridges was capable of returning to light duty work, the award of temporary total disability benefits was manifestly erroneous and must be reversed. See Bonvillain v. Preferred Industries and LWCC, 04-0849 (La.App. 1 Cir. 5/27/05), 917 So.2d 1, 10.

Supplemental Earnings Benefits

Gaten’s next asserts that the evidence does not support the award of supplemental earnings benefits, which began on August 16, 2013.
The purpose of supplemental earnings benefits is to compensate the injured employee for the wage earning capacity she lost as a result of her accident. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive supplemental earnings benefits if she sustains a work-related injury that results in her inability to earn ninety percent (90%) or more of her average pre-injury wage. See La. R.S. 23:1221(3)(a); Poissenot v. St. Bernard Parish Sheriff’s Office, 09-2793 (La.1/9/11), 56 So.3d 170, 174. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in her inability to earn that amount. If the employee satisfies that burden of proof, the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee’s community or reasonable geographic location. See La. R.S. 23:1221(3)(c)(i); Poissenot, 56 So.3d at 174.
|1fiThe burden of proof does not shift to the employer merely because an employee proves she is unemployed at the time of trial or unable to obtain the same type of job as before the accident. Poissenot, 56 So.3d at 178. A claimant’s testimony that she is no longer able to return to her pre-injury employment, without more, is insufficient to prove entitlement to supplemental earnings benefits. Sartin v. LSU/Bogalusa Medical Center, 07-1367 (La.App. 1 Cir. 2/8/08), 984 So.2d 777, 780; *1004 Cooper, 862 So.2d at 1006. As explained by the supreme court, “The statute clearly places its focus on the amount of wages earned before and after the accident, not the type of occupation or the type of work performed.” Poissenot, 56 So.3d at 175.
The WCJ must take into account all factors which might bear on an employee’s ability to earn a wage in determining whether the injured employee has met her burden of showing an inability to earn ninety percent of her pre-injury wages, including factors such as the employee’s medical condition, efforts at obtaining employment post-injury, ánd actual work history after the accident. Arretteig v. Our Lady of the Lake Hosp., Inc., 13-1603 (La.App. 1 Cir. 3/21/14), 142 So.3d 1048, 1051-52. Whether a claimant has carried her burden of proof is a question of fact subject to the manifest error or clearly wrong standard of appellate review. See Poissenot, 56 So.3d 170, 174; Batiste v. Tenet Healthcare Corporation, 09-1192 (La.App, 1 Cir. 2/12/10), 35 So.3d 352, 354, writ denied, 10-0559 (La.5/7/10), 34 So.3d 864.
As previously recognized, the only evidence concerning Bridges’ inability to return to employment was her testimony and Dr. Daunis’ report, which limited her to light duty. Bridges confirmed that she was unable to return to her prior positions with Gaten’s and Oceans because her back pain prevented her from driving a bus. She also testified that prior to the accident she applied for a driving position with Greyhound. When that company contacted her after the accident, h ¡/Bridges did not go to the interview because she “wasn’t able to do the driving.” She testified to only one job application after the accident — the sitter position — and she was hired for that job. She began training in July and, starting in August, was earning $8.00 an hour.
The WCJ calculated Bridges’ pre-acci-dent average weekly wage to be $188.14, consisting of average weekly earnings of $150.00 from Oceans and $38.14 from Ga-ten’s. Based on that rate, the 90% threshold for post-accident weekly wages is $169.33. The evidence in the record not only fails to support a finding that Bridges was incapable of earning that amount after the accident, the evidence affirmatively proves that she has earned that amount, or more, during several pay periods working as a sitter.
The payroll records for Home Instead reflect that Bridges works for $8.00 an hour and receives a paycheck twice a month. The amount of each check varies depending on how many hours she worked during the pay period. Bridges began receiving compensation in August 2013, and the records confirm that she earned in excess of $169.33 per week during the following pay periods:

Pay Period Average Earnings Per Week

9/16/13-9/30/13 $182.00 per week ($390 ⅛- 15 x 7);
10/1/13-10/15/13 $180.13 per week ($386 - 15 x 7);
11/1/13-11/15/13 $170.80 per week ($366 ^ 15 x 7).
While Bridges earned less than $169.33 per week during the remaining pay periods in 2013, her compensation was entirely a function of the number of hours she worked each pay period. Bridges never testified that her hours were limited in any manner by her physical condition, or that she was unable to perform any of the functions of the job at any time. In fact, at the time of the trial in March 2014, she testified that she was working an average *1005 of about 24 hours per week, which produces an average weekly wage of $192.00.
|17Bridges’ testimony established only that she could not return to her pre-injury employment. That testimony, without more, is insufficient to prove her entitlement to supplemental earnings benefits. See Sartin, 984 So.2d at 780; Cooper, 862 So.2d at 1006. Bridges’ actual earnings after the accident confirm that she was physically capable of earning at least 90% of her pre-accident average weekly wage. Considering the entirety of the evidence, we cannot find a reasonable basis for the award of supplemental earnings benefits and, therefore, reverse that award. See Gilley v. Parkview Baptist School, 00-1937 (La.App. 1 Cir. 11/9/01), 804 So.2d 103, 106, affirmed, 02-0623 (La.10/25/02), 832 So.2d 975 (per curiam) (finding no error in the judgment of the court of appeal, which reversed an award of supplemental earnings benefits).[1]

Penalties and Attorney Fees

In its final assignment of error, Gaten’s contends that the WCJ erred in awarding penalties and attorney fees based on Ga-ten’s failure to timely pay disability benefits and its failure to pay medical benefits or authorize treatment.
An employer or insurer may be assessed with penalties and attorney fees for the failure to timely pay disability or medical benefits unless “the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” See La. R.S. 23:1201 F(2). A claim is reasonably controverted when the employer has sufficient factual or medical information to reasonably counter evidence presented by the claimant. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890; Arabie Brothers Trucking Co. v. Gautreaux, 12-0849 (La.App. 1 Cir. 12/21/12), 111 So.3d 1088, 1092, writ denied, 13-0536 (La.4/26/13), 112 So.3d 844. Whether an 11Remployer reasonably controverted a claim is a question of fact that is subject to the manifest error standard of review. Arabie Brothers, 111 So.3d at 1092; Atwell v. First General Services, 06-0392 (La.App. 1 Cir. 12/28/06), 951 So.2d 348, 357, writ denied, 07-0126 (La.3/16/07), 952 So.2d 699. Louisiana Revised Statute 23:1201 F is penal in nature and must be strictly construed. See Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46.
The WCJ found that Gaten’s failed to pay disability compensation benefits without reasonably controverting the claim, and awarded attorney fees of $10,000.00 plus a penalty in the amount of 12% of the unpaid compensation or a total of not more than $50.00 per day, whichever is greater, subject to an aggregate limit of $2,000.00 for the $50.00 per day penalty. Because the record does not support an award of disability benefits, the WCJ’s award of penalties and attorney fees for the failure to pay those benefits is reversed.
The WCJ also imposed penalties and attorney fees for Gaten’s failure to pay medical benefits or authorize treatment, awarding $5,000.00 in attorney fees and a penalty in the amount of 12% of the unpaid benefits or a total of not more than $50.00 per day, whichever is greater, subject to an aggregate limit of $2,000.00 for the $50.00 per day penalty. Although no obligation arose to pay disability benefits, *1006 an injured employee’s right to medical expenses is separate and distinct from the right to disability benefits, and an employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. See La. R.S. 23:1203; Bonvillain v. Preferred Industries and LWCC, 04-0849 (La.App. 1 Cir. 5/27/05), 917 So.2d 1, 10. Consequently, an employee may recover medical expenses even though there is no recovery for disability benefits. Bonvillain, 917 So.2d at 10.
Gaten’s did not assign any error to the WCJ’s award of medical expenses to Bridges, but the defendant does contend that it had a reasonable basis to controvert |isthe claim, arguing that Bridges violated company policy by assisting the student onto the bus, and failed to timely report the accident. Gaten’s also points to the discrepancies in the Lallie Kemp medical records and Bridges’ history of prior back pain.
Gaten’s presented no evidence of any investigation of Bridges’ account of the accident. No representative of LCTA was called as a witness. The three witnesses who did testify for the defendant, Clarence Gaten, Ayanna Jackson, and Preston Davis, confirmed that Bridges reported the accident, but they offered no testimony about any investigation or further review of her account of the accident or her injury. Jackson, the employee responsible for reporting accidents to LCTA, admitted that she encountered communication “problems” in reporting the accident and had to submit the claim numerous times, acknowledging, “I didn’t know what was going on with it myself.” When asked if the claim had been denied, she responded, “I am not sure exactly what’s going on with that.”
As recognized by the WCJ in her reasons for judgment, if Gaten’s had any doubt about the circumstances of the accident, it was aware of the name of the contact person for the school group involved in the trip. That person could have provided additional information concerning the identity of the handicapped student and his mother for further follow up and investigation, but no efforts were undertaken to pursue that information.
Gaten’s contends on appeal that Bridges violated company policy by assisting the student and by failing to immediately report the incident, but it was advised of that information when Bridges reported the accident the following Monday morning. Despite being fully aware of these purported violations of company policy, Gaten’s authorized medical treatment for Bridges at North Oaks Hospital and at North Oaks Clinic. Those authorizations undermine Gaten’s contention that it relied on the purported violations to deny the claim. Gaten’s also |2nfailed to offer evidence of what role, if any, the discrepancies in the Lallie Kemp medical record played in the decision to deny reimbursement of medical expenses to Bridges.
The record reasonably supports the WCJ’s finding that Gaten’s failed to timely pay medical benefits to Bridges and had no reasonable basis to controvert the claim. Therefore, the award of penalties and attorney fees for the failure to pay medical benefits is not manifestly erroneous.

Answer to Appeal

Bridges filed an answer to the appeal seeking an additional award for her attorney fees and costs incurred on appeal. Although Bridges did not succeed in opposing all of Gaten’s assignments of error, she did prevail on some of the issues, namely that the evidence at trial sufficiently established that she sustained an accident and injuries covered by the Act, and that she was entitled to the award of penalties and attorney fees for Gaten’s failure *1007 to timely pay medical benefits. We find an award of $1,500.00 in attorney fees on appeal to be appropriate. See Salomone v. Greater Gulf Coast Auto Auctions, Inc., 12-0952 (La.App. 1 Cir. 4/26/13), 115 So.3d 1177, 1183.
CONCLUSION
For the reasons set forth above, we reverse the awards of temporary total disability benefits and supplemental earnings benefits set forth in the May 1, 2014 judgment, and reverse the awards of penalties and attorneys fees for the failure to pay those benefits. We affirm the award of penalties and attorney fees for the failure to pay medical benefits or authorize medical treatment, and we award the claimant additional attorney fees incurred on appeal in the amount of $1,500.00. Costs of this appeal are assessed equally to both parties.
JUDGMENT REVERSED IN PART, AFFIRMED IN PART; ANSWER TO APPEAL GRANTED, ADDITIONAL ATTORNEY FEES OF $1,500.00 AWARDED.

. Because of our ruling on this assignment of error, we pretermit consideration of a related assignment of error asserting that the average weekly wage calculated by the WCJ was excessive because it improperly included the earnings from Bridges’ employment with Oceans.