STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2023 CA 0055

TAMMY DUBOIS

VERSUS

WALMART

Judgment Rendered: ___SEP 2 1 2023___

* * * * *

ON APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 9
TERREBONNE PARISH, LOUISIANA
DOCKET NUMBER 20-06176

HONORABLE ELIZABETH C. LANIER
WORKERS' COMPENSATION JUDGE PRESIDING

* * * * *

| | |
|---|---|
| Brad O. Price<br>Denham Springs, Louisiana | Attorney for Claimant-Appellee<br>Tammy Dubois |
| Michael E. Parker<br>Lafayette, Louisiana | Attorney for Defendant-Appellant<br>Walmart, Inc. |

BEFORE: THERIOT, PENZATO, and GREENE, JJ.

**GREENE, J.**

In this workers' compensation case, an employer appeals a judgment: finding a former employee was injured in a work-related accident causing an aggravation of her pre-existing back and hip conditions; decreeing the former employee was entitled to medical treatment until the aggravation resolved; and, awarding benefits, penalties, and attorney fees to the former employee. After review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2014, Tammy Dubois, then 37 years old, began employment as a cashier at a Walmart store in Houma, Louisiana. She later became a support manager, and as of 2020, was a department manager. Ms. Dubois had a history of chronic dull low back pain during her Walmart employment. Her supervisors and co-workers were aware of her condition, because she often complained and went home on her lunch break to take pain medicine.

According to Ms. Dubois, on the morning of September 1, 2020, she was at work and moving multiple cases of bottled water from a display shelf onto a cart. As she lifted one case, turned, and shifted her weight, Ms. Dubois claims she heard something "snap" in what she thought was her lower back or hip, followed by a burning sensation, and pain in her whole lower back and left leg. She dropped the case of water and told Cody Duplantis, a co-worker who was just approaching, that she had hurt herself; she asked him to pick up the case of water she had dropped. Ms. Dubois further claims that she walked around trying to see if the pain would ease, but it did not. She then told Zena Johnson, the store manager, who was standing with Starla Ledet, an assistant manager, and at least one other Walmart employee, that she had hurt herself and was going to take her lunch break, go home, and take a pain pill. After her lunch break, Ms. Dubois returned to work for the rest of that day, but the pain did not subside. She claims the pain she felt was different than her usual chronic low back pain, describing the new pain as "off to the side … stabbing, [and] throbbing … ." She also claims that she told Zach Gaudet, a Walmart asset protection manager, that her current pain was different than her usual chronic pain. An accident report was not completed on that day.

2

At the trial of Ms. Dubois' workers' compensation claim, Ms. Ledet testified on behalf of Walmart. She was familiar with Ms. Dubois' regular complaints of pain and use of pain medications. She remembered hearing Ms. Dubois say, on September 1, 2020, that she was going home on her lunch break to take pain medication for her back but denied that Ms. Dubois reported an accident or injury. According to Ms. Ledet, she would have completed an accident report that day had Ms. Dubois reported an accident to her, because this was her duty as a manager.

After September 1, 2020, Ms. Dubois did not return to her job duties at Walmart. On September 7th, six days later, she went to the Terrebonne General Medical Center emergency room (TGMC) with complaints of sharp, stabbing "left lower back pain with radiation into [her] left leg after picking up on a case of water at work." She reported to the TGMC staff that she was taking medication for prior back issues but "this [was] a different type of pain." A lumbar x-ray showed no acute findings, and after receiving multiple injections, she was discharged with a diagnosis of sciatica,[1] given medication, and was told to consult her primary care physician as soon as possible for further evaluation and a possible MRI referral.

On September 9, 2020, Ms. Dubois returned to Walmart to complete an accident report. Ms. Ledet also completed an employer report of injury indicating that, on September 1st, Ms. Dubois injured her back when she was moving a case of water and turned the wrong way.[2] Walmart arranged for Ms. Dubois to be seen at the Occupational Medicine Services clinic (OMS) on September 17th, where she again presented with complaints of low back pain radiating down her left leg. A nurse practitioner diagnosed her with sciatica, recommended that she follow up with a neurosurgeon or orthopedist for her recently developed complaints of loss of bladder control and saddle anesthesia type symptoms, and indicated she could not return to work. According to Ms. Dubois,

---

[1] Sciatica is a condition characterized by pain radiating from the back into the buttock and posterior/lateral aspects of the leg. www.online-medical-dictionary.org/definitions. As conceded by Walmart in its appellate brief, the TGMC medical record incorrectly indicated Ms. Dubois had right-side sciatica, rather than left-side sciatica, because all of Ms. Dubois' complaints were on the left side.

[2] Ms. Dubois completed a separate incident report on the same day and listed Mr. Duplantis, Mr. Gaudet, and Ms. Ledet as witnesses.

she had several conversations with Michael Elkins, Walmart's workers' compensation case manager, trying to set up the recommended follow-up appointment, but the appointment did not occur.

On October 9, 2020, Ms. Dubois' attorney emailed Mr. Elkins asking that he contact Dr. Peter Liechty, a neurosurgeon, with approval for Ms. Dubois to see Dr. Leichty as her physician of choice.[3] After her attorney received no response, on October 15th, Ms. Dubois filed a disputed claim for compensation with the Office of Workers' Compensation (OWC), claiming Walmart had refused to authorize the recommended neurological evaluation. On October 27th, she consulted Dr. Liechty on her own. He examined Ms. Dubois and discussed her medical history with her at length. Although he noted her "fairly robust baseline [history] of low back and left hip issues," Dr. Liechty found her clinical state was "markedly worse" and, more likely than not, was related to the September 1st work-related incident. He opined that she appeared to have suffered an injury to either her low back, left SI joint,[4] or left hip, and that he also had concerns regarding left sacroiliitis.[5] He recommended MRIs of her lumbar spine and left hip to explore his concerns and indicated she was completely and temporarily disabled at that time.

On November 6, 2020, before seeing Dr. Liechty's report, Walmart answered Ms. Dubois' disputed claim, denying that she had a work-related accident and pointing out her history of medically-documented low back complaints. After he received Dr. Liechty's report, Walmart's counsel emailed Ms. Dubois' counsel, on November 12th, stating that Dr. Liechty's report did not change Walmart's position, and Walmart would not approve the recommended MRIs or treatment with Dr. Liechty, nor would it initiate the payment of workers' compensation benefits to Ms. Dubois.

---

[3] Under La. R.S. 23:1121, an injured employee shall have the right to select one treating physician in any field or specialty, and she shall submit herself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter during the pendency of her compensation claim.

[4] "SI joint" is a short form for "sacroiliac joint," the immovable joint formed by the lateral surfaces of the sacrum (five fused vertebrae forming a triangle-shaped structure at the back of the pelvis) and ilium (the largest of three bones that make up each half of the pelvic girdle). www.online-medical-dictionary.org/definitions.

[5] Sacroiliitis is inflammation of the sacroiliac joint. www.online-medical-dictionary.org/definitions.

On November 8, 2021, more than a year later, Ms. Dubois saw Dr. Manish Singh, a neurosurgeon, for a second medical opinion at Walmart's request. Before the appointment, Dr. Singh reviewed Ms. Dubois' past medical records, including x-rays and MRIs. Then, after examining Ms. Dubois and discussing her condition with her, Dr. Singh wrote a report opining that Ms. Dubois did not sustain a work-related injury on September 1, 2020. In reaching this conclusion, Dr. Singh stated that a post-accident MRI only showed chronic and degenerative findings and did not show any new pathology indicating an acute lumbar spine injury or SI joint issues associated with the alleged September 1, 2020 accident.

An OWC workers' compensation judge (WCJ) ultimately conducted a trial where the parties introduced documentary evidence, Ms. Dubois and Ms. Ledet testified, and the WCJ then took the matter under advisement. On September 9, 2022, the WCJ signed a judgment in Ms. Dubois' favor and against Walmart, decreeing, *inter alia*, that: (1) on September 1, 2020, Ms. Dubois was injured in a work-related accident causing an aggravation of a pre-existing lumbar condition and left hip condition; (2) Ms. Dubois was entitled to reasonable and necessary medical treatment of her low back, left hip, left leg, and SI joint, at Walmart's expense, until the aggravation of her pre-existing condition was resolved; (3) Ms. Dubois was entitled to indemnity benefits from the date of the accident and continuing, as allowed by law; and (4) Walmart was liable for $8,000 in penalties and $8,000 in attorney fees for failure to approve Ms. Dubois' choice of physician, failure to properly investigate her claim, and failure to initiate medical treatment and indemnity benefit payments.

Walmart appeals from the adverse judgment.

## DISCUSSION

### Compensable Injury

In assignments of error numbers one through five, Walmart contends the WCJ erred in finding that Ms. Dubois proved an accident occurred in the course of scope of her employment resulting in a compensable injury and subsequent disability for which she was entitled to medical and temporary disability benefits.

In *Headley v. Textron Systems,* 20-1174 (La. App. 1 Cir. 4/26/21), 324 So.3d 1080, 1085, this Court set forth the applicable law and burdens of proving a work-related accident:

> The Workers' Compensation Act provides coverage to a worker for personal injury by accident arising out of and in the course of [her] employment. La. R.S. 23:1031[A]. A worker must prove the chain of causation required by the workers' compensation statutory scheme: [she] must establish by a preponderance of the evidence that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. A worker's testimony alone may be sufficient to discharge [her] burden of proving an accident, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. (Citations omitted.)

Also, in *Bridges v. Gaten's Adventures Unlimited, L.L.C.,* 14-1132 (La. App. 1 Cir. 4/2/15), 167 So.3d 992, 1001-02, this Court set forth the applicable law and burdens of proving/disproving the aggravation of a pre-existing condition:

> An otherwise healthy employee with a pre[-]existing condition is entitled to benefits if she can prove that her work-related accident contributed to, aggravated, or accelerated her injury. When an employee proves that before the accident she had not manifested disabling symptoms, but commencing with the accident the disabling symptoms appeared and manifested themselves, and medical or circumstantial evidence indicates a reasonable possibility of a causal connection, the employee's work injury is presumed to have aggravated or accelerated the pre[-]existing infirmity or disease to produce her disability.

> Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate, or combine with the pre-existing disease or infirmity to produce the employee's disability. (Citations omitted.)

The WCJ's determination of whether an employee has carried her burden of proof is factual and subject to the manifest error standard of review. *Calhoun v. Sanderson Farms, Inc.,* 22-0478 (La. App. 1 Cir. 12/16/22), 357 So.3d 354, 359. In applying the manifest error standard, this Court determines if the WCJ's conclusion was reasonable, not whether the WCJ was right or wrong. *Id.* Where two permissible views of the evidence exist, the WCJ's choice between them cannot be manifestly erroneous. *Id.* Further, under the manifest error standard, this Court defers to the WCJ's findings regarding witness credibility, including the evaluation of expert testimony. *Id.* After a

thorough review of the record, as discussed below, we conclude the WCJ's determination that Ms. Dubois sustained a compensable injury is primarily based on factual findings, including credibility determinations, and that there is a reasonable factual basis for those findings in the record of this case.

Regarding the occurrence of a work-related accident,[6] Ms. Dubois testified at trial that, on September 1, 2020, when she lifted a case of water, turned, and shifted her weight, she felt a "snap" in her lower back or hip, followed by a burning sensation, and pain in her whole lower back and left leg. She also testified that she told Mr. Duplantis and Ms. Johnson that she hurt herself and that Ms. Ledet and Mr. Gaudet heard her make the statement to Ms. Johnson. Ms. Dubiois also testified that, when she returned from her lunch break, she told Mr. Gaudet that the pain she was having was different than her usual chronic low back pain. Ms. Dubois' testimony is corroborated by the September 7, 2020 TGMC medical record, which also documents her report that the sharp, stabbing lower back pain radiating into her left leg was a "different type of pain" than her prior back pain.[7] At trial, Ms. Ledet, Walmart's only live witness, denied hearing Ms. Dubois report an accident but admitted on cross-examination that she had no reason to doubt such a report; and, neither party called Mr. Duplantis, Ms. Johnson, or Mr. Gaudet as witnesses.[8] Thus, despite the inconsistency between Ms. Dubois' and Ms. Ledet's testimony, the WCJ evaluated the conflicting evidence and chose to believe that the September 1, 2020 incident in fact occurred and was a compensable work-related accident. Because there is a reasonable basis in the record for this factual determination, we find no manifest error. *See Headley,* 324 So.3d at 1085; *Calhoun,* 357 So.3d at 363.

---

[6] As defined by Louisiana workers' compensation law, an "accident" is "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

[7] The medical records of OMS and Dr. Liechty also corroborate the occurrence of an accident.

[8] Both parties argue in brief that their opponent's position should be adversely viewed for failure to call certain witnesses to testify. When a litigant fails to produce evidence within his reach, a presumption that the evidence would have been detrimental to his case may apply, unless the failure to produce the evidence is adequately explained. *See Robins v. Pirzadah,* 19-0523 (La. App. 1 Cir. 12/27/19), 292 So.3d 570, 577, *writ denied,* 20-00043 (La. 4/27/20), 295 So.3d 396. This adverse presumption is rebuttable and may not apply when the witness is equally available to the opposing party. *See Walley v. Vargas,* 12-0022 (La. App. 1 Cir. 9/21/12), 104 So.3d 93, 104, n.8; *Augustus v. St. Mary Parish School Bd.,* 95-2498 (La. App. 1 Cir. 6/28/96), 676 So.2d 1144, 1152.

We next review the WCJ's determination that Ms. Dubois' work-related accident caused the aggravation of pre-existing lumbar and left hip conditions. The record clearly establishes that Ms. Dubois had pre-existing chronic low back pain, as well as left hip pain, before the date of the alleged September 1, 2020 accident.[9]   At trial, Ms. Dubois admitted that she had chronic back pain during the entire time she worked at Walmart and that she complained of it regularly to her co-workers.  However, the record also shows that, before September 1st, she was able to perform her job duties while having the chronic pain.  For at least one year before the accident, Ms. Dubois' duties included stocking shelves in Walmart's paper and chemical department with items such as paper towels, toilet paper, washing detergent, and cleaning supplies.  During that year, and well before that, Ms. Dubois' medical records indicate that she took pain medication and received injections for low back and hip issues, but her doctor, Dr. Patrick Walker, had not restricted her from work status.  She testified that she worked full-time, five days a week, plus overtime.

In contrast, after the September 1, 2020 accident, Ms. Dubois complained of a different pain, and testified that, in the days before she went to TGMC on September 7th, she could barely walk and her left leg was "going numb, pulling, [and] burning."  At TGMC on September 7th, and at OMS on September 17th, Ms. Dubois repeated the same symptoms described above and was diagnosed with sciatica.  On October 27th, Dr. Liechty noted her significant low back and left hip history, but specifically found that her clinical state was "markedly worse," was probably related to the September 1st accident, and that she appeared to have suffered an injury to either her low back, left SI joint, or left hip.  At trial, Ms. Dubois testified that, since the accident, she had not returned to her pre-accident health and did not think she could return to her former type of job duties, because she "[couldn't] function hardly half the time," due to leg numbness and back pain.

---

[9] In 1995, Ms. Dubois hurt her lower back in a motor vehicle accident; in 2000, she hurt her lower back and right leg or knee in a boating accident; in 2009, she hurt her lower back while working at Rite Aid; in 2019, she had left hip and left groin pain and was diagnosed with left side sciatica; and, in July 2020, about two months before the subject accident, she had lumbar pain and reported to her doctor that she was "hurting all the time."

We find that, based on the above evidence, Ms. Dubois was entitled to the presumption that the September 1st accident aggravated her pre-existing lumbar and left hip conditions and produced her disability. *See Bridges*, 167 So.3d at 1001. That is, Ms. Dubois proved that, before September 1, 2020, her chronic back and hip conditions did not manifest disabling symptoms, but as of the September 1st accident, "markedly worse" disabling low back and hip symptoms manifested themselves. Further, she presented medical evidence and circumstantial evidence that indicated a reasonable possibility of a causal connection between the accident and the disabling symptoms. *See Bridges*, 167 So.3d at 1001.

Thus, despite Walmart's knowledge of Ms. Dubois' pre-existing condition, possession of medical records documenting her pre-existing condition, and later production of Dr. Singh's opinion that Ms. Dubois did not sustain a work-related injury, the WCJ determined that the September 1st accident occurred, produced an aggravation, and that Walmart did not overcome the presumption that the accident aggravated Ms. Dubois' pre-existing condition. Where two permissible views of the evidence exist, whether lay, expert, or medical, the WCJ's choice between them cannot be manifestly erroneous. *Calhoun*, 357 So.3d at 359. These assignments of error are meritless.

## Penalties and Attorney Fees

In assignment of error number seven, Walmart contends the WCJ erred in assessing Walmart with penalties and attorney fees. Walmart contends it reasonably controverted Ms. Dubois' claim, because it had evidence of her long and extensive history of back pain and that she did not report that a work-related accident occurred on September 1, 2020.

In *Headley*, 324 So.3d at 1086-87, this Court set forth the applicable law and burden of proof for an assessment of penalties and attorney fees:

> The Workers' Compensation Act pertinently provides that, unless an employer reasonably controverts a workers' compensation claim, its failure to pay such benefits in accordance with the Act shall result in a penalty and reasonable attorney fees. *See* La. R.S. 23:1201[F]. An employer reasonably controverts a claim when it has sufficient factual and/or medical information to counter the employee's factual and/or medical information *throughout the time it refused to pay* all or part of the benefits allegedly owed. Statutes providing for penalties and attorney fees are penal in nature

and must be strictly construed. *The crucial inquiry is whether the employer had an articulable and objective reason to deny payment at the time it took action.* Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. A WCJ's determination that an employer should be cast with penalties and attorney fees is a factual question, and we review that determination under the manifest error standard of review. (Emphasis added; some citations omitted.)

Walmart correctly points out that it had lay and medical evidence showing Ms. Dubois' long and extensive history of back pain and hip pain. In its brief, it also devotes considerable argument to parsing Ms. Dubois' medical records to show that the injury and pain she claimed after September 1, 2020, were located in the same back area, hip, and leg where she had been treated for years before. However, an employee's pre-existing condition does not disqualify her from ever asserting a claim for a work-related injury to the same body parts; rather, as pointed out previously, she need merely show that the pre-existing condition was aggravated. *See Dufrene v. Louisiana Workers' Compensation Corporation,* 19-1202 (La. App. 1 Cir. 5/11/20), 304 So.3d 93, 97. An employee's entitlement to benefits for the aggravation of a pre-existing condition is a well-established principle in workers' compensation law dating back as far as 1917 – a principle with which Walmart presumably was familiar when evaluating Ms. Dubois' claim. *See* Johnson III, A., 13 La. Civ. L. Treatise §232 and §232, n.1, Workers' Compensation Law and Practice, *The abnormally susceptible employee* (5th ed. - Dec. 2022 update) ("The courts have firmly established the principle that the employer must take the worker as he finds him. The worker who is abnormally susceptible to disability is entitled to the full protection of the [Louisiana] compensation statute, even though the same accident would have caused little or no harm to a healthy worker.") (Footnote omitted.)

Further, Walmart presented no evidence documenting the timeline of its investigation of Ms. Dubois' claim. Although Mr. Elkins, Walmart's workers' compensation case manager, authorized Ms. Dubois to be seen at OMS on September 17, 2020, there is no evidence indicating why he, or any other Walmart representative, failed to authorize the recommended follow up visit to either a neurosurgeon or orthopedist, and refused to respond to Ms. Dubois' attorney's October 9, 2020 request for approval of Dr. Liechty as

10

Ms. Dubois' physician of choice. The record does show, however, that Ms. Dubois' attorney sent Dr. Liechty's report to Walmart's attorney on November 12, 2020. In his report, Dr. Liechty noted Ms. Dubois' pre-existing lumbar and left hip issues, but clearly indicated that her clinical state was "markedly worse," she was completely and temporarily disabled at that time, and that he recommended follow up treatment. On that same day, Walmart's attorney acknowledged receipt of Dr. Liechty's report but stated that it changed nothing; he stated that Walmart had appropriately denied Ms. Dubois' claim and would not approve recommended treatment nor initiate the payment of benefits.

Notwithstanding Walmart's possession of medical records indicating Ms. Dubois had pre-existing lumbar and left hip conditions, when Walmart received Dr. Liechty's report that Ms. Dubois' pre-existing condition had worsened, it had a continuing duty to investigate and make every reasonable effort to assemble factual and medical information to ascertain whether Ms. Dubois' claim was compensable before denying benefits. *See Terrebonne v. St. Tammany Parish Hospital*, 21-1212 (La. App. 1 Cir. 7/20/22), 347 So.3d 909, 918. Walmart points to no evidence in the record explaining what "articulable and objective reason" it had to wait an entire year before sending Ms. Dubois to Dr. Singh for a second medical opinion. *See Headley*, 324 So.3d at 1088. We are mindful of our duty to strictly construe penalty statutes. However, absent explanatory evidence from Walmart, we find the record reasonably supports the WCJ's finding that Walmart had no reasonable basis to continue to deny Ms. Dubois' claim without prompt investigation. As such, we find no manifest error in the WCJ's factual determination to assess penalties and attorney fees against Walmart for failure to approve Ms. Dubois' choice of physician, failure to properly investigate her claim, and failure to initiate medical treatment and indemnity payment benefits. This assignment of error is meritless.

**Forfeiture of Benefits**

In assignment of error number six, Walmart contends the WCJ erred in failing to find Ms. Dubois violated La. R.S. 23:1208 by making willfully false statements for the purpose of obtaining workers' compensation benefits. Under La. R.S. 23:1208(A) and

(E), if a WCJ determines that an employee has willfully made a false statement or representation for the purpose of obtaining any workers' compensation benefit, that employee shall forfeit any right to such benefits. *Headley*, 324 So.3d at 1089. To prevail on a forfeiture claim, the employer must prove each element required by La. R.S. 23:1208(A): (1) a false statement or representation; (2) that was willfully made; and (3) made for the purpose of obtaining workers' compensation benefits. *Calhoun*, 357 So.3d at 361-62. Because forfeiture of benefits is a harsh remedy, La. R.S. 23:1208 must be strictly construed. *Id.* at 361. We apply the manifest error standard of review to the WCJ's determination regarding benefit forfeiture, just as we do to the WCJ's determinations regarding the employee's burden of proving a compensable injury and the assessment of penalties and attorney fees. *See Id.* at 362.

In its brief, Walmart claims Ms. Dubois failed to disclose prior left leg problems to TGMC staff, OMS staff, Dr. Liechty, and Mr. Elkins. Walmart contends Ms. Dubois willfully made these false statements or misrepresentations to obtain workers' compensation benefits, in violation of La. R.S. 23:1208(A). We have carefully reviewed each of Ms. Dubois' allegedly false statements, as well as her trial testimony, wherein Walmart's counsel cross examined her about the statements. Based on the medical records from TGMC, OMS, and Dr. Liechty, and Ms. Dubois' explanations at trial, we find the WCJ had a reasonable factual basis from which to determine that none of Ms. Dubois' statements, even if incomplete or incorrect, were willfully made for the purpose of obtaining workers' compensation benefits. *See Calhoun*, 357 So.3d 361-62. The WCJ obviously found Ms. Dubois to be very credible and truthful in her explanations. The WCJ is in a superior position to observe a witness' demeanor and to evaluate credibility. *Calhoun*, 357 So.3d at 363. We conclude the WCJ did not manifestly err in finding no violation of La. R.S. 23:1208. This assignment of error is meritless.

## CONCLUSION

After a thorough review of the record, we conclude the WCJ did not manifestly err in concluding that Tammy Dubois proved, by a preponderance of the evidence, the occurrence of a work-related accident causing an aggravation of her pre-existing lumbar

12

condition and left hip condition.  We affirm the judgment (1) decreeing that Tammy Dubois is entitled to medical treatment until the aggravation resolves and (2) awarding benefits, penalties, and attorney fees to her.  We assess costs of the appeal to Walmart, Inc.

**AFFIRMED.**