HUGHES, J.
 

 |2This is an appeal from an Office of Workers’ Compensation (OWC) ruling denying a claim for additional workers’ compensation benefits following termination of benefits by the employer. For the reasons that follow, we amend the judgment in part and affirm as amended.
 

 FACTS AND PROCEDURAL HISTORY
 

 On November 15, 2005 fifty-eight-year-old Mary Alexander injured her neck, back, and foot while engaged in the duties of her employment with Sanderson Farms, Inc. (Sanderson), in Hammond, Louisiana. Ms. Alexander received medical treatment and workers’ compensation indemnity benefits from Sanderson.
 
 [1]
 

 By June 2006 Ms. Alexander had returned to light duty employment with Sanderson while continuing to receive medical care. On June 19, 2006 and June 20, 2006, Ms. Alexander telephoned Sand-erson to state that she would not be at work because of back pain. On June 20, 2006, Ms. Alexander was treated at Lallie Kemp Regional Medical Center (Lallie Kemp) in Independence, Louisiana, given two injections, and instructed to remain off work until June 26, 2006; however, she failed to notify Sanderson that per doctor’s orders she would be out for the remainder of the week.
 

 On June 26, 2006 Ms. Alexander called Sanderson to let them know her husband was experiencing chest pains and she was accompanying him to the doctor. On June 27, 2006 Ms. Alexander returned to work but learned that her employment had been terminated on June 23, 2006 for failure to report for work or call in for three consecutive days.
 

 | ¡/Thereafter, Ms. Alexander was paid indemnity benefits for July and August of 2006 and she continued to receive medical benefits and vocational rehabilitation counseling. In December of 2006 Ms. Alexander became employed as a substitute teacher with the Tangipahoa Parish School System, but she maintains that she is unable to earn 90% of her pre-accident wages.
 

 On July 31, 2006 Ms. Alexander filed a “Disputed Claim for Compensation” with the OWC seeking temporary total disability benefits, supplemental earnings benefits, reimbursement of medical bills, mile
 
 *9
 
 age reimbursement, attorney’s fees, and penalties.
 

 Following a hearing before the OWC on March 12, 2008, the OWC judge ruled that Ms. Alexander sustained a work-related accident on November 15, 2005 while in the course and scope of her employment with Sanderson, and that she was entitled to reasonable and necessary medical care at Sanderson’s expense; however, it was found that supplemental earnings benefits had been paid through August 2006 and that no further compensation benefits were due as “jobs were identified and available [that] would have been in excess of 90% of [Ms. Alexander’s] weekly earnings while employed at Sanderson Farms.”
 

 Ms. Alexander appeals this decision, urging the following assignments of error:
 

 1. The [workers’] compensation judge manifestly erred in his refusal to order the payment of TTD [temporary total disability] benefits for the time period of 6/19/06-6/26/06, and a penalty and attorney fee for the failure to pay these benefits timely.
 

 2. The [workers’] compensation judge manifestly erred in his failure to award the claimant SEB [supplement earnings] benefits beyond July and August, 2006.
 

 3. The workers’ compensation judge manifestly] erred in finding that jobs were identified and available which |4would have paid more than 90% of the employee’s average weekly wage.
 

 4. The workers’ compensation judge manifestly erred in his failure to award penalties and attorney fees for the failure to authorize the injection ordered by Dr. Logan in a timely manner.
 

 5. The [workers’] compensation judge manifestly erred in his failure to award the reimbursement of the claimant’s out-of-pocket medical expenses, and a penalty and attorney fees for the failure to pay this medical expense timely.
 

 LAW AND ANALYSIS
 

 The Workers’ Compensation Act provides coverage to an employee for personal injury by “accident” arising out of and in the course of his employment. An “accident” is defined by LSA-R.S. 23:1021(1) as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.”
 

 An employee must prove the chain of causation required by the workers’ compensation statutory scheme as adopted by the legislature. He must establish that the accident was employment-related, the accident caused the injury, and that the injury caused the disability.
 
 Clausen v. D.A.G.G. Const.,
 
 2001-0077, p. 2 (La.App. 1 Cir. 2/15/02), 807 So.2d 1199, 1201,
 
 writ denied,
 
 2002-0824 (La.5/24/02), 816 So.2d 851. A claimant has the burden of proving disability by clear and convincing evidence.
 
 See Walker v. High Tech Refractory Services, Inc.,
 
 2003-1621, p. 3 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.
 

 In ruling in favor of Sanderson, the workers’ compensation judge included within the written judgment the following reasons for his decision:
 

 | sUpon review of the evidence and the law, and particularly upon observing the witnesses[’] demeanor as they testified, the Court concludes as follows[:]
 

 ... that Mary Alexander, employee, sustained a work related accident with injury on November 15, 2005, while in
 
 *10
 
 the course and scope of her employment with Sanderson Farm[s], the employer/defendant herein.
 

 ... that employee Mary Alexander is entitled to reasonable and necessary medical care provided by or at the direction of Dr. Bryant and within the medical fee schedule, payable by the employer, Sanderson Farms.
 

 ... that given the unreliable nature of the employee’s testimony, and the Court accepting as credible the testimony of the employer’s personnel manager, nurse and the vocational rehabilitation specialist, the Court finds SEB to be paid for the months of July 2006 and August 2006 as evidenced by the post dated LDOL-WC 1020 (Employee Monthly Earnings Report) accepted into evidence as Joint Exhibit Q. Otherwise, jobs were identified and available which would have been in excess of 90% of employee’s weekly earnings while employed at Sanderson Farms.
 

 ... that the defendant herein, Sand-erson Farms, has reasonably controverted the claims brought by employee, Mary Alexander.
 

 The OWC judge determined that Ms. Alexander had suffered a compensable work-related accident and medical benefits were ordered to be paid; however, Ms. Alexander contends that she is also entitled to temporary total disability benefits for the period of June 19 through June 26, 2006, supplemental earnings benefits after August 2006, and reimbursement of out-of-pocket medical expenses. Ms. Alexander further contends she should have been awarded penalties and attorney’s fees for failure of Sanderson to timely pay for a prescribed injection, as well as for nonpayment of temporary total disability benefits and reimbursement of her out-of-pocket expenses.
 

 After a careful examination of the record presented on appeal, we conclude that the credibility issues that concerned the OWC judge were not Irrelevant to the legal questions presented for resolution in this case. Although the OWC judge stated that Ms. Alexander’s testimony was “unreliable” and that he accepted “as credible” the testimony of defendant’s witnesses, there was no real conflict in testimony on relevant points of fact.
 

 Temporary Total Disability
 

 An employee seeking temporary total disability benefits in accordance with LSA-R.S. 23:1221(1)(c) must prove by clear and convincing evidence that he is unable to engage in any gainful occupation, whether or not the same type of work he was engaged in at the time of injury. In determining whether an employee has discharged his burden of proof, the workers’ compensation judge should accept as true a witness’ uncontradicted testimony, even though the witness is a party, absent circumstances casting suspicion on the reliability of that testimony. A workers’ compensation judge’s determinations of whether an employee’s testimony is credible and whether he has discharged his burden of proof regarding his entitlement to temporary total disability benefits are factual determinations that will not be disturbed upon review absent manifest error.
 
 Moran v. G & G Construction,
 
 2003-2447, pp. 5-6 (La.App. 1 Cir. 10/29/04), 897 So.2d 75, 80,
 
 writ denied,
 
 2004-2901 (La.2/25/05), 894 So.2d 1148.
 
 See also Russell v. Regency Hospital of Covington, LLC,
 
 2008-0538, p. 5 (La.App. 1 Cir. 11/14/08), 998 So.2d 301, 305.
 

 Ms. Alexander seeks temporary total disability benefits for the week beginning June 19, 2006. At that time, Ms. Alexander was employed by Sanderson but she called in sick on June 19, 2006, stating that she had aggravated her injured back. Ms.
 
 *11
 
 Alexander stated that she tried to get an appointment with her regular doctor but could not get there at the time available, so on June 20, 2006, she went to Lallie Kemp for treatment. Ms. |7Alexander notified Sanderson on both June 19th and 20th that she would be out sick. The Lallie Kemp doctor issued Ms. Alexander an excuse from work for that week, indicating she could return to work on June 26, 2006. Ms. Alexander did not provide this information to Sanderson or call in to indicate she would not be coming to work on either June 21, 22, or 23, 2006. On June 26, 2006 she did call and inform Sanderson she would not be coming to work because she had to accompany her husband to the doctor. When Ms. Alexander reported for work on June 27, 2006, she was informed that her employment had been terminated effective June 23, 2006 for violation of the company policy prohibiting employees from failing to report for work without notifying the company for three days. Ms. Alexander testified that although she was aware of this rule, she did not believe it applied to her in that instance because she had completed a Family Medical Leave Act (FMLA) package in connection with her absences in May 2006. At the trial of this matter, Ms. Alexander was asked why she had stated to the Lallie Kemp doctor that she had
 
 not
 
 previously been off work in connection with her back injury, when in fact she had been off work from May 17, 2006 until June 1, 2006 because of her back. Ms. Alexander explained at trial that even though she was off for two prior weeks under the FMLA, she could have been “called in” to work by Sanderson, so “it wasn’t like I was just off ... [t]o me, it wasn’t.”
 
 [2]
 

 Sanderson paid no compensation benefits to Ms. Alexander for the week beginning June 19, 2006, and although she was paid supplemental earnings benefits in July and August of 2006, she received no further | ^compensation benefits even though her later employment as a substitute teacher provided her with income less than 90% of her prior Sanderson wages.
 

 To prove her claim for temporary total disability, Ms. Alexander introduced documentary medical evidence, including MRI reports, establishing that she in fact had objective back pathology. Sanderson introduced no evidence to contradict these findings or that would call into question whether Ms. Alexander’s condition was related to her fall at work.
 

 The June 20, 2006 Lallie Kemp emergency department records introduced into evidence stated that Ms. Alexander presented complaining of “chronic back pain from protruding disc in lower back” and that due to an increase in activities “@ work” her back pain had “flared-up” such that her medication was not providing her with relief. These records further indicated that Ms. Alexander complained of the pain in her back getting worse after lifting “over 50 lb [sic] of chicken.” The Lallie Kemp doctor found a decreased range of motion and muscle tenderness. Ms. Alexander was given two injections and instructed to see her regular physician, rest for six days, and return to work the following Monday, June 26, 2006.
 

 
 *12
 
 In her testimony before the OWC, Ms. Alexander stated that her duties at work had aggravated her back condition, so she sought treatment at Lallie Kemp. No witnesses testified and no medical evidence was presented by Sanderson to contradict either Ms. Alexander’s testimony or the Lallie Kemp doctor’s assessment that Ms. Alexander’s flare-up was connected to her work-related injury.
 

 Sanderson defends against the claim for temporary total disability by asserting that Ms. Alexander’s treating physicians had previously released her to light duty work, and that the Lallie Kemp work excuse received when | nMs. Alexander returned to work did not provide any notation relating the absence to her back. Sanderson further makes the following assertion in brief to this court:
 

 The Claimant can not simply go into hiding and not tell the employer and then expect the employer to pay her workers’ compensation benefits for days when she failed to live up to her employment obligation which included all days between June 20, 2006 and June 26, 2006. Accordingly, the Claimant’s claim for compensation indemnity benefits for the period of time between June 19, 2006 and June 20, 2006 should have been and were denied by the trial court.
 

 We find no merit in these arguments.
 

 An employer has an ongoing duty to review medical reports concerning an injured employee’s disability, and may not deny or discontinue workers’ compensation based on inconclusive medical reports. Further, employers must demonstrate that they made reasonable efforts to medically ascertain a workers’ compensation claimant’s exact condition before denying benefits.
 
 Redler v. Glorlando’s Restaurant Corporation,
 
 2007-658, p. 8 (La.App. 5 Cir. 2/6/08), 979 So.2d 512, 517,
 
 writ denied,
 
 2008-0863 (La.6/6/08), 983 So.2d 925. An employer must rely on competent medical advice when making the decision to deny benefits.
 
 Baullion v. Old American Pottery Company,
 
 2001-0562, p. 14 (La.App. 3 Cir. 11/21/01), 801 So.2d 567, 576. In the instant case, Sanderson failed to show that it made any attempt to obtain a medical opinion prior to denying Ms. Alexander’s claim for temporary total disability for the week beginning June 19, 2006.
 

 We find no merit in Sanderson’s argument that Ms. Alexander was restricted to treatment by her specialists, Dr. Logan or Dr. Bryant, or that these doctors’ prior release to light duty work justified Sander-son’s assessment of this claim. Louisiana Revised Statute 23:1142(0(1) |inprovides: “In no event shall prior consent be required for any emergency procedure or treatment deemed immediately necessary by the treating health care provider.” The Lallie Kemp doctor concluded after examining Ms. Sanderson that two injections were immediately warranted and that six days of rest were justified by her condition. No medical testimony was introduced to contradict the appropriateness of this treatment. Lallie Kemp records were available to Sanderson upon request, pursuant to LSA-R.S. 23:1127. Faced with a perceived conflict between Lallie Kemp’s diagnosis and treatment and that previously ordered by Doctors Logan and Bryant, Sanderson had a duty to investigate further the extent of Ms. Alexander’s disability.
 
 See Pekinto v. Olsten Corporation,
 
 587 So.2d 68, 73 (La.App. 4 Cir.1991).
 

 Sanderson’s assertion that Ms. Alexander went “into hiding” both exaggerates exceedingly the facts of this case and lacks relevancy to the issues before the court. Sanderson’s own records reveal that Ms. Alexander called in “sick” on both June 19, 2006 and June 20, 2006, and that Ms. Alexander turned in a Lallie Kemp “Re
 
 *13
 
 turn to Work or School Authorization,” dated June 20, 2006, which stated that she was to “[r]est for 6 days” and that she could “return to work on Monday 6-26-06,” which she turned in to Sanderson on or about June 27, 2006. During the hearing before the OWC, Sanderson placed much emphasis on the fact that Ms. Alexander failed to either call in sick or submit the Lallie Kemp excuse on the other days she was scheduled to work that week, June 21st, 22nd, or 23rd, and was terminated accordingly to Sanderson policy. Although Sanderson may have had a valid reason to terminate Ms. Alexander’s continued employment, this does not bear on the issue of whether Sanderson was obligated to pay Ms. | Alexander temporary total disability benefits for her inability to work due to a compensable medical condition.
 

 We conclude the OWC erred in denying temporary total disability benefits to Ms. Alexander for the week beginning June 19, 2006, and we hereby amend the OWC judgment to award Ms. Alexander these benefits.
 

 Supplemental Earnings Benefits
 

 An employee is entitled to supplemental earnings benefits in accordance with LSA-R.S. 23:1221(3)(a) if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. The employee bears the burden of proving, by a preponderance of the evidence, that the work-related injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Once the employee meets this burden, the burden of proof shifts to the employer, who, in order to defeat the employee’s claim for supplemental earnings benefits or to establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic area.
 
 Hayes v. Louisiana State Penitentiary,
 
 2006-0553, pp. 12-13 (La.App. 1 Cir. 8/15/07), 970 So.2d 547, 558,
 
 writ denied,
 
 2007-2258 (La.1/25/08), 973 So.2d 758.
 

 Ms. Alexander testified at the trial of this matter that she was unable to find employment until December of 2006 when she was hired by the Tangipahoa Parish School Board as a substitute teacher and that she does not earn 90% of her pre-accident wages as a substitute teacher.
 

 |12To justify its refusal to pay further supplemental earnings benefits, Sanderson presented the testimony of Angelle Nash, a vocational rehabilitation counselor with Cascade Disability Management, Inc., who testified that in the fall of 2006 and early 2007, she provided vocational counseling to Ms. Alexander. On December 4, 2006 Ms. Nash provided Ms. Alexander with information identifying at least five local businesses that had available full time job openings that met her restrictions.
 
 [3]
 
 Ms. Nash testified that she met with Ms. Alexander on December 21, 2006, and was informed by Ms. Alexander that she was going to wait to look for a job until after the first of the year because her husband had surgery, one of her grandchildren was
 
 *14
 
 ill, and she did not have time to look for a job. Ms. Alexander testified that she did contact the prospective employers but was unable to obtain one of these jobs.
 
 [4]
 

 Sanderson does not dispute the fact that Ms. Alexander does not earn 90% of her pre-accident wages in her employment with the school board. Rather, Sanderson attempted to prove that there were other jobs available that were disclosed to Ms. Alexander by the vocational rehabilitation counselor, Ms. Nash, that paid at least 90% of Ms. Alexander’s pre-accident wages. Concerning this issue, testimony was elicited at trial that raised a question as to whether Ms. Alexander timely applied for these jobs. | ^However, it is not necessary to reach this credibility issue. By Ms. Nash’s own admission, she failed to ascertain whether the jobs she identified were still available when they were approved by Ms. Alexander’s doctor.
 

 When a defendant employer is unable to show that job opportunities were still open at the time claimant’s treating physician approved them, the employer fails to meet its burden of proving that a claimant is employable at 90% of her pre-injury wage.
 
 See Davis v. Cippriani’s Italian Restaurant,
 
 2002-1144, p. 4 (La.App. 1 Cir. 2/14/03), 844 So.2d 58, 61,
 
 writ
 
 denied, 2003-0753 (La.5/9/03), 843 So.2d 403.
 
 [5]
 

 See also Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840, p. 9 (La.1997), 696 So.2d 551, 556 (holding, that in order to defeat the employee’s claim for supplemental earnings benefits or establish the employee’s earning capacity, an employer must prove, by a preponderance of the evidence, that the employee is
 
 physically able to perform
 
 a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region).
 

 In the instant case, because Sanderson failed to establish that jobs were available to Ms. Alexander that her treating physician had approved as being jobs Ms. Alexander was physically able to perform, Sanderson failed in its burden to show that there were suitable, available jobs in Ms. | uAlexander’s community.
 
 [6]
 
 Thus, Ms. Al
 
 *15
 
 exander is entitled to collect supplemental earnings benefits; we hereby amend the OWC judgment to award these benefits.
 
 Claim for Medical Expenses Incurred for Treatment by Dr. Gaudin
 

 Ms. Alexander contends that the trial court erred in failing to award her reimbursement of a $75.00 charge for treatment by Dr. Gaudin at the Hammond Walk-In Clinic. Prior to Ms. Alexander seeing Dr. Gaudin, she had previously been treated by Dr. Mark Daunis at North Oaks Occupational Health Services, and by Dr. Paul Van Deventer at the Orthopaedic Clinic of Mandeville, both of whom were chosen by Sanderson.
 

 Louisiana Revised Statute 23:1121(B) provides in pertinent part:
 

 (1) The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain pri- or consent from the employer or his workers’ compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
 

 (2)(a) If the employee is treated by any physician to whom he is not specifically directed by the employer or insurer, that physician shall be regarded as his choice of treating physician.
 

 (b) When the employee is specifically directed to a physician by the employer or insurer, that physician may also be deemed as the employee’s choice of physician, if the employee has received written notice of his right to select one treating physician in any field or specialty, and then chooses to select the employer’s referral as his treating specialist after the initial medical examination as signified by his signature on a 11schoice of physician form. The notice required by this Subparagraph shall be on a choice of physician form promulgated by the director of the office of workers’ compensation and shall contain the notice of the employee’s rights provided under R.S. 23:1121(B)(1). Such form shall be provided to the employee either in person or by certified mail.
 

 (3)Paragraph (2) of this Subsection shall not apply to other physicians to whom the employee is referred by the physician selected by the employer unless the employer or insurer has obtained the choice of physician form provided for under Subparagraph (2)(b) separately for any such physician after the initial medical examination with that physician.
 

 Sanderson did not establish that either Dr. Daunis and Dr. Van Deventer were Ms. Alexander’s choice of physician under LSA-R.S. 23:1121 (B). Therefore, Ms. Alexander’s first choice of a treating physician was Dr. Gaudin, and Sanderson’s failure to pay the charge for his fee was not justifiable. Consequently, the OWC erred in failing to award the $75.00 charge of Dr. Gaudin payable by Sanderson; we hereby amend the OWC judgment to reflect the award of $75.00 to Ms. Alexander.
 

 Penalties and Attorney Fees
 

 Ms. Alexander claims she is entitled to collect penalties and attorney fees for the
 
 *16
 
 failure of Sanderson to pay: temporary total disability for the week beginning June 19, 2006, the $75.00 charge of Dr. Gaudin, and the failure to authorize an injection recommended by Dr. Logan/Dr. Bryant in November 2006. (Ms. Alexander concedes that Sanderson reasonably controverted her claim for supplemental earnings benefits and she had not requested penalties and attorney fees on this portion of her suit.
 

 | ](¡Pursuant to LSA-R.S. 23:1201(F),
 
 [7]
 
 when an employer fails to commence payment of benefits timely, to pay continued installments timely, or to pay medical benefits timely, both penalties and attorney fees are recoverable unless the claims are reasonably controverted. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the claimant.
 
 Zavala v. St. Joe Brick Works,
 
 2007-2217, p. 9 (La.App. 1 Cir. 10/31/08), 999 So.2d 13, 20-21,
 
 writ denied,
 
 2008-2827 (La.1/30/09), 999 So.2d 762.
 
 See also Joseph v. J.E. Merit Constructors, Inc.,
 
 2001-1666, p. 9 (La.App. 1 Cir. 6/21/02), 822 So.2d 72, 77-78,
 
 writ denied,
 
 2002-2295 (La.4/4/03), 840 So.2d 1201.
 

 The mere production of a different opinion of a doctor who never examined the claimant does not constitute competent medical advice sufficient to reasonably controvert the claim. While a utilization review process has its place in the workers’ compensation process, it has been consistently held that a long-distance diagnosis by a physician advisor is not 117an acceptable basis for denial of treatment and benefits.
 
 Rose v. Maison Deville Care Center,
 
 2005-1307, pp. 5-6 (La.App. 3 Cir. 4/5/06), 927 So.2d 625, 629,
 
 writ denied,
 
 2006-1054 (La.9/1/06), 936 So.2d 205;
 
 Harrington v. Coastal Construction & Engineering,
 
 96-681, pp. 3-4 (La.App. 3 Cir. 12/11/96), 685 So.2d 457, 459-60,
 
 writ denied,
 
 97-0109 (La.3/7/97), 689 So.2d 1375.
 

 With respect to the claims of temporary total disability, Sanderson produced no medical evidence to rebut that presented by Ms. Alexander to establish that her disability prevented her from working the week of June 19, 2006; thus, the claim was not reasonably controverted
 
 *17
 
 and Ms. Alexander is entitled to penalties and attorney fees as to this claim.
 

 With respect to Ms. Alexander’s claim for reimbursement of her visit to Dr. Gaudin, the denial of which was contrary to the provisions of LSA-R.S. 28:1121 (allowing a claimant a first choice of a physician within each field or specialty without prior approval), this claim was likewise not reasonably controverted and Ms. Alexander is entitled to penalties and attorney fees thereon.
 

 With respect to the injection recommended by Ms. Alexander’s treating physician in November 2006, which was denied by Sanderson, the record reflects that this denial was made pursuant to Sanderson’s workers’ compensation insurer’s peer utilization review process, during which a physician selected by the insurer reviews the medical records and makes a recommendation to the insurer as to whether the proposed treatment should be approved or denied. In the instant case, there was no indication in the record that the peer review doctor ever examined Ms. Alexander. Under these circumstances, the peer review process does not constitute competent medical advice sufficient to reasonably controvert the claim. For this 11 ¿reason, the requested November 2006 injection was improperly denied, entitling Ms. Alexander to penalties and attorney fees.
 

 In accordance with the LSA-R.S. 23:1201(F), for each of these three claims Ms. Alexander is entitled to a penalty “in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.” Accordingly, Ms. Alexander is entitled to a $2,000.00 penalty on each of these three claims, for a total penalty of $6,000.00. We also award Ms. Alexander $5,000.00 in attorney fees for the presentation of her claim before the OWC, and an additional sum of $2,500.00 in attorney fees for the successful prosecution of this appeal. The OWC judgment is hereby amended to include these awards.
 

 CONCLUSION
 

 For the reasons assigned, the judgment of the Office of Workers’ Compensation is amended in part, as stated hereinabove, and affirmed as amended. All costs of this appeal are to be borne by defendant/appel-lee, Sanderson Farms, Inc.
 

 AMENDED IN PART AND AFFIRMED AS AMENDED.
 

 PETTIGREW, J., concurs.
 

 McDONALD, J., dissents.
 

 [1]
 

 . Evidence was introduced indicating that Ms. Alexander had been paid a total of $8,302.85 in indemnity benefits and $16,194.59 in medical benefits by the time of trial.
 

 [2]
 

 . Stephen "Chip” Blessy, the personnel manager for Sanderson when Ms. Alexander worked there, testified that even though Ms. Alexander was off work in May 2006 because of her back injury, the Sanderson home office had requested that she fill out FMLA paperwork. Nevertheless, because Ms. Alexander had been released to return to light duty, when Sanderson determined that it had a light duty job available that met Ms. Alexander’s work restrictions, she was asked to come back to work June 1, 2006, which she did.
 

 [3]
 

 . These businesses included: Cingular Wireless, Advance America Cash Advance, Capital One Bank, Express Check Advance, Huntington Learning Center, and AmSouth Bank. In January 2007 Ms. Nash further provided Ms. Alexander information on jobs available with the following companies: Books-a-Million, Networktel, and Landmark Hotel. (The Express Check Advance and the Books-a-Million positions were not approved by Ms. Alexander's doctor.)
 

 [4]
 

 . As to the Cingular Wireless and the Huntington Learning Center jobs, Ms. Alexander testified that the locally available jobs were only part-time. As to the Advance America Cash Advance job, Ms. Alexander testified that she filled out an application and was never called by the company. Regarding the Capital One Bank job, Ms. Alexander said that she was told that only Internet applications were being accepted and she was unable to access the online application. As to AmSouth Bank, Ms. Alexander submitted an online application, but she stated that she did not pass the qualifying test administered by the bank. Ms. Alexander also testified that the Landmark Hotel only had a housekeeping job available that involved bending, which she was restricted from doing. Ms. Alexander did not indicate whether she contacted Network-tel.
 

 [5]
 

 .
 
 Accord Lanthier v. Family Dollar Store,
 
 2006-779, p. 4 (La.App. 3 Cir. 11/2/06), 942 So.2d 732, 735, and
 
 East-Garrett v. Greyhound Bus Lines,
 
 99-421, pp. 7-8 (La.App. 3 Cir. 11/3/99), 746 So.2d 715, 720 (concluding that it is implicit in the holding of
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.
 
 that the employer must establish that the jobs are still in existence when it is determined that they are within the employee’s capabilities; otherwise, the employee may be put in a position of having to apply for jobs that she might not be capable of performing, essentially a vain and useless act).
 

 [6]
 

 .On this issue, Sanderson further argues that if not for Ms. Alexander's “misconduct” in failing to follow company sick leave notification policy, which led to her termination, she would have continued in a light duty job with Sanderson in which she would have earned 90% of her pre-accident wages. We find no merit in this argument. Chip Blessey testified that Sanderson does not have
 
 permanent
 
 light duty positions. Mr. Blessey also testified that after an employee has been on light duty for
 
 *15
 
 more than ninety days, Sanderson requires the employee to be on FMLA status, and although he has known of an employee being maintained on light duly for more than a year, light duty status for that length of time has to be approved by the Sanderson home office.
 

 [7]
 

 . Louisiana Revised Statute 23:1201(F) provides in pertinent part:
 

 F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by
 
 R.S. 23:1121
 
 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under (.his Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
 

 (1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers’ compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers’ compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
 

 (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.