GUIDRY, J.
|2In this workers’ compensation action, the employers appeal a judgment of the Office of Workers’ Compensation Administration (OWCA) finding that the claimant sustained a compensable, workplace injury and awarding the claimant temporary, total disability (TTD) benefits, penalties, and attorney fees for the employers’ wrongful termination of those benefits. Based on a careful review of the record before us, we affirm.
FACTS AND PROCEDURAL HISTORY
On May 1, 2014, while working in his position as a laborer for New Line Environmental Systems, LLC (New Line), 55-year-old Bobby L. Davis jumped from a tractor as it began to tilt and then roll sideways down a levee.. .At the time of the accident, Mr. Davis was driving the tractor with a trailer attached up a New Orleans levee. Following the accident, which occurred on a Thursday afternoon, Mr. Davis assisted other employees in lifting the tractor and attached trailer, which had landed sideways at the bottom of the levee, and setting the machinery upright. He then completed his work for the day and went home. The following day, Mr. Davis completed a drug test and took the paperwork back to New Line office. Although he was scheduled to work that day, Mr. Davis went home after turning in the drug test paperwork, stating that he was still “shaken up” from the prior day’s accident. Thereafter, Mr. Davis did not return to work, but he was paid workers’ compensation medical and TTD benefits.
*924 On June 17, 2014, New Line and Canal HR, as a PEO Administrative Employer,[1] filed a disputed claim for compensation, contending that Mr. Davis had | ¿violated La. R.S. 23:1208, providing for penalties for misrepresentations concerning benefit payments, and terminated payment of all workers’ compensation benefits. According to a supplemental disputed claim filed by the employers, they alleged that Mr. Davis reported a description of his alleged workplace accident to physicians that was “materially inconsistent with the events witnessed by employees of New Line Environmental.”
In response to the disputed claims filed by the employers, Mr. Davis filed, among other things, an answer, wherein he admitted that he sustained injury “on or about May 1, 2014,” in the course and scope of his employment as an employee of New Line and that he sustained an injury resulting in a loss of earning capacity, but the nature and extent was yet to be determined. He denied that the average weekly wage set forth in the employers’ disputed claim was correct or that he was offered, requested, or refused rehabilitation services.
Following the denial of motions for summary judgment filed by Mr. Davis and termination of an unsuccessful attempt at mediation, Mr. Davis filed a separate disputed claim for compensation, wherein he sought a determination of his disability status, reinstatement of TTD benefits, authorization for medical treatment by physicians of his choosing, and mileage reimbursement. In response to Mr. Davis’s disputed claim for compensation, the employers denied that Mr. Davis had sustained an accident as defined under the Louisiana Workers’ Compensation Act and denied for lack of sufficient information to justify a belief that he “sustained a disabling injury as a result of any alleged accident while employed by [employers] and further maintainfed] that [Mr. Davis was] not temporarily totally disabled, permanently disabled or suffering any loss of earning capacity.” The workers’ compensation judge later signed an order consolidating the two actions. The matter thus proceeded to trial.
14Following the trial in this matter, the workers’ compensation judge signed a judgment dated July 15, 2015, wherein she found that Mr. Davis had sustained an injury in the course and scope of his employment with New Line and that Mr. Davis had carried his burden of proving that he was temporarily, totally disabled from May 2, 2014 and continuing. Consequently, the workers’ compensation judge awarded Mr. Davis TTD benefits from June 20, 2014 (the date of termination of benefits) and continuing, plus legal interest from the date that each installment was due, until paid. The workers’ compensation judge also awarded Mr. Davis all of the medical expenses he had incurred, as well as penalties and attorney fees for the employers’ arbitrary, capricious, and without-probable-cause termination of workers’ compensation benefits and failure to authorize and/or pay medical benefits after June 19, 2014. She dismissed the employers’ claim for violation of La. R.S. 28:1208 with prejudice. Following rendition, the *925 workers’ compensation judge granted the employers a suspensive appeal of the judgment.
ASSIGNMENTS OF ERROR
On appeal, the employers aver the following:
1. The [workers’ compensation judge] erred as a matter of law by finding [Mr.] Davis was entitled to indemnity or medical benefits.
2. The [workers’ compensation judge] erred by awarding penalties and attorney fees for [New Line’s] termination of indemnity and medical benefits.
DISCUSSION
In their first assignment of error, the employers argue that the workers’ compensation judge erred in finding that Mr. Davis met his burden of establishing that he was entitled to TTD benefits by clear and convincing evidence. In particular, the employers point out the lack of more recent medical evidence to establish that Mr. Davis was disabled from working.
| ^Pursuant to La. R.S. 23:1221(l)(c), a claimant has the burden of proving temporary and total disability by clear and convincing evidence. In the absence of clear and convincing evidence that the employee is physically unable to engage in any employment, the claimant’s demand for TTD benefits must fail. Roussell v. St. Tammany Parish School Board, 04-2622, p. 10 (La.App. 1 Cir. 8/23/06), 943 So.2d 449, 467, writ not considered, 06-2362 (La. 1/8/07), 948 So.2d 116. Clear and convincing proof has been defined as an intermediate standard falling somewhere between the ordinary “preponderance of the evidence” civil standard and the “beyond reasonable doubt” criminal standard. Clear and convincing proof requires objective medical evidence of the disabling condition causing the employee’s inability to engage in any employment. Boussell, 04-2622 at p. 10, 943 So.2d at 457-58.
Disability can be proven by medical and lay testimony. The fact finder must weigh all the evidence, medical and lay, in order to determine if the claimant has met his burden of proof. Bridges v. Gaten’s Adventures Unlimited, L.L.C., 14-1132, p. 13 (La.App. 1 Cir. 4/2/15), 167 So.3d 992, 1002-03. The claimant must provide objective, expert testimony as to his medical condition, symptoms, pain, and treatment, in addition to personal testimony, in order to meet the clear and convincing evidence standard. The factual finding of whether a claimant is entitled to TTD benefits is subject to the manifest error or clearly wrong standard of appellate review. Boussell, 04-2622 at p. 10, 943 So.2d at 458. Hence, this factual finding should be given great weight and should not be overturned absent manifest error. Bridges, 14-1132 at p. 13, 167 So.3d at 1003.
Mr. Davis testified at the workers’ compensation hearing that he was 56 years old, that he dropped out of school in the 10th grade, and that most of his work experience has been as a laborer. He said he had never held an office job or any type of job where he could just sit down during the course of the day. | ^Following the accident, Mr. Davis sought medical treatment from Dr. Marcus Schroeder, a chiropractor at Atlas Behab and Medical, and at the Redi-Med Clinic & Occupational Health Center, until his workers’ compensation benefits were terminated. Once his workers’ compensation benefits were terminated, Mr. Davis went to the Interim LSU Public Hospital in New Orleans to receive treatment.
Mr. Davis testified that he sustained injuries to neck, back, left leg, and left shoulder as a result of the accident, and when questioned at the hearing about what *926 complaints he had at the time of the hearing, he testified, “I basically still hurt the same way.” He also stated that he needed additional medical treatment, because he gets aggravated that he is not working, explaining “I go and do things for a little while and I start hurting again.” He testified that if he starts to work, he gets a sharp pain in his back, left leg, and left shoulder. As he described:
I say I got to do something. So I’ll go work around the yard trying to do a little something, you know. I could cut— try to cut grass or something. ... I could work on my car for a little while; but I just can’t do nothing consistent. Then when I’m doing it, I look like I get nauseated and disgusted, you know, so I got to stop.
[[Image here]]
I want to go and do things but ... I couldn’t do no job.
[[Image here]]
[I]f I get started on a job, ... I couldn’t last. I couldn’t last the day no way. I get nauseated. I take a pain pill. The pain pill put me to sleep. Sometimes — sometimes I throw up on them. And the doctor give me another pill — a Pepcid pill or something to calm my stomach down.
[[Image here]]
The pain and the medication they give you puts you to sleep. You can’t keep your eyes open. And then they nauseate you and they give — they did give me some pills for my stomach to sort of — so I don’t throw up.
Mr. Davis said that he had not earned any wages from any job since he received his last paycheck from New Line and that he had not applied anywhere for a job since he left New Line. Mr. Davis’s girlfriend with whom he lived, |7Charlotte May, also stated that Mr. Davis started going to “a free place, a hospital in New Orleans. ... LSU,” when his workers’ compensation benefits were terminated. She described Mr. Davis as a “tough cookie.” She said he basically did most of the things that he wanted to do to an extent, as long as he had medication, but if he did, he would lay down in between doing things, which is something he never did before.
Dr. Schroeder, who was accepted as an expert in the field of chiropractic medicine, also testified at the hearing. Dr. Schroeder acknowledged that during the time he treated Mr. Davis, it was his opinion that Mr. Davis was totally incapacitated from work. He stated that up until the last time he treated Mr. Davis, he was still pretty symptomatic, and as such, Mr. Davis was still incapacitated from work. He stated that the reason he disabled Mr. Davis was due to the pain that Mr. Davis suffered and because he also had some neurological findings, which Dr. Schroeder explained “if you try to work through muscle weakness ... it can cause ... future injury or just danger to other people he’s working with.”
The neurological findings that Dr. Schroeder observed during his time of treatment were diminished reflexes, especially on Mr. Davis’s left side in his bicep and patella, a little weakness of his grip, and sciatic-type pain in his left leg. Mr. Davis’s medical records from Redi-Med reveal that on his dates of treatment at that facility (May 22, 2014 to June 9, 2014), spasms were observed in Mr. Davis’s para-spinal muscle on both the left and right side of his back and his straight leg raising test was positive bilaterally.
Dr. Schroeder testified that he would classify consistent pain experienced for over three months as being chronic, and with this in mind, he agreed that he would find a patient totally incapacitated if the patient had chronic pain, basically without *927 improvement, as to his neck, his back, his left shoulder, or- his left leg. Mr. Davis’s certified medical records from the Interim LSU Public Hospital in New Orleans, Isfrom roughly September 2014 through February 2015,[2] show that Mr. Davis consistently complained of pain in his neck, left shoulder and back. According to those medical records, the treatment Mr. Davis received from the Interim LSU Public Hospital consisted mostly of being prescribed pain medication with recommendations that he obtain a primary care physician and physical therapy.
An employer has an ongoing duty to review medical reports concerning an injured employee’s disability, and may not deny or discontinue workers’ compensation based on inconclusive medical reports. Further, employers must demonstrate that they made reasonable efforts to medically ascertain a workers’ compensation claimant’s exact condition before denying benefits. Alexander v. Sanderson Farms, Inc., 08-2225, p. 9 (La.App. 1 Cir. 5/8/09), 17 So.3d 5,12.
The employers in this matter contend that they have no obligation to pay TTD benefits to Mr. Davis, because he failed to prove that he was unable to work; but the record before us does not support this contention. Instead, the record shows that Mr. Davis did establish that he was disabled from working, based on the medical opinion of Dr. Schroeder and his own testimony. Moreover, we find it disingenuous for the employers to criticize the evidence presented by Mr. Davis when his ability to present medical evidence in support of his burden of proof as to the extent of his disability was stymied by the employers’ termination of all benefits based on their arbitrary determination that Mr. Davis had violated La. R.S. 23:1208. See Brown v. Kwok Wong, 01-2525, pp. 7-8 (La.App. 1 Cir. 12/20/02), 836 So.2d 315, 320-21 (wherein this court rejected the defendants’ assertion that the claimant did not meet her burden of proving her injury was work related because her treating physician opined he could not relate her injuries to the work accident without further diagnostic testing and evaluation, which the |3defendants had refused to authorize. Instead, this court found the physician’s statement that “such an injury was consistent” with the type of accident the claimant had suffered sufficient to meet her burden of proof, especially in the absence of countervailing evidence).
Equally important is that the TTD benefits paid to Mr. Davis were terminated without any conclusive medical evidence indicating that Mr. Davis could resume working.[3] Instead, the record before us indicates that the employers terminated Mr. Davis’s workers’ compensation benefits, including TTD benefits, not due to any failure of Mr. Davis to prove his entitlement to those benefits, but due to the employers’ belief that Mr. Davis had violated La. R.S. 23:1208. So, in the absence of the employers being able to successfully establish that Mr. Davis violated La. R.S. 23:1208, the law required the employers, not Mr. Davis, demonstrate that Mr. Davis’s medical condition was such that he was no longer entitled to receive workers’ *928 compensation benefits. See Alexander, OS-2225 at p. 9, 17 So.3d at 12. Such was not established by the employers in this case, and accordingly, we find no error in the workers’ compensation judge’s determination that Mr. Davis is entitled to the continued receipt of workers’ compensation benefits, including TTD benefits.
In their remaining assignment of error, the employers contend that the workers’ compensation judge erred in assessing them with penalties and attorney fees for the termination of Mr. Davis’s workers’ compensation benefits. The employers argue that they reasonably controverted Mr. Davis’s claim, and as such, they did not arbitrarily or capriciously terminate Mr. Davis’s benefits.
1 mStatutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers’ compensation benefits are penal in nature and must be strictly construed. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. Quave v. Airtrol, Inc., 11-1182, p. 11 (La.App. 1 Cir. 6/8/12), 93 So.3d 733, 740, Pursuant to La. R.S. 23:1201(F), an employer or insurer may be assessed with penalties and attorney fees for failure to timely pay weekly indemnity or medical benefits where the employer or insurer has failed to reasonably controvert the claim. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the employee. Alexander, 08-2225 at p. 16, 17 So.3d at 16.
With regard to the discontinuation of benefits, on the other hand, La. R.S. 23:1201(1) applies and provides, in pertinent part:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. ...
Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. The crucial inquiry is whether the employer has an articulated and objective reason for discontinuing benefits at the time it took that action. Lewis v. Temple Inland, 11-0729, pp. 6-7 (La. App. 1 Cir. 11/9/11, 80 So.3d 52,), 80 So.3d 52, 57-58. The workers’ compensation judge’s determination of whether an employer or insurer should be cast with penalties and attorney’s fees is essentially a question of fact subject to the manifest error or clearly wrong standard of review. Lewis, 11-0729 at p. 11, 80 So.3d at 60.
Inin her reasons for judgment, the workers’ compensation judge expressed the following regarding the evidence presented at the hearing and her basis for finding that penalties and attorney fees should be assessed:
Employer/Insurer’s basis of the allegations of “fraud” all surround two main contentions: 1. Employee using different words as to whether he was “thrown” off the tractor, “fell” off the tractor or “jumped” off the tractor; and 2. Whether or not [the] employee stated that he hit the ground with any part of his body. The time length of this accident could not have been more than a few minutes or possibly even less than that. Clearly this employee was off of the tractor as a direct result of the tractor starting to flip over, which was documented by a co- *929 employee at trial who yelled “jump off’ at the .time of the accident.
Way too much credit was given by [the] insurer to the statements by the co-employee Adam Guidry standing at the top of the levee watching the accident unfold. This co-employee claimed to be able to see everything that happened those few minutes and to be sure that claimant did not “fall” and was not “thrown off’ the tractor and that the claimant’s body did not hit the ground. Adam Guidry testified that [the] employee “jumped off’ the tractor, “landed on both feet” and “stood up”. And further testified that the accident did not [happen] quickly but happened “slow”. The court was not convinced by this testimony.
At trial[, the] employee was a credible witness. Employee’s girlfriend was a credible witness. Dr. [Schroeder] was a credible witness. When [the] employee testified[,] he answered without being asked leading questions by his attorney. He spoke from his mind and heart as to what he believed to be true.
Never once during this trial was any testimony ... credible enough to cast any serious doubt on the credibility of the employee. Benefits should have never been terminated.
However, the testimony of Adam Guidry was not as credible. All of the testimony of Adam Guidry was in yes or no answers to leading questions of material fact. How he would have answered without being given the answer by his attorney, we had no opportunity to find out. And, this court did not find credible the testimony that Guidry could see all that he claimed to have seen and it was not in an extremely short period of time but happened “slow”.
[Given the] termination of all medical and indemnity, benefits based on these allegations with these facts [, the] employer/insurer did not carry its burden of proof of employee’s violation of La. ■ R.S. 23:1208 “fraud”. Employer/Insurer did not have probable cause to terminate benefits. It had a reason to investigate further!,] but not to terminate.
ItaThe medicals on claimant are old because after 6-19-2014, more than a year ago, employee had to seek “charity” medical treatment due to [the] employer/insurer’s improper termination of medical benefits.
In Brown v. Shop Rite, Inc., 11-727, pp. 14-15 (La.App. 3 Cir. 11/2/11), 75 So.3d 1002, 1011-12, writ denied, 11-2647 (La. 2/10/12), 80 So.3d 480, the appellate court not only affirmed the workers’ compensation judge’s assessment of penalties and attorney fees against the employer, but increased the award based on its determination that the evidence on which the employer relied was insufficient to justify discontinuance of benefits, but instead mandated further investigation of the claimant’s condition.
In the matter before us, and as recognized by the workers’ compensation judge, the differences in the accounts of what occurred at the time of Mr. Davis’s accident were minor. The accounts of the material facts of what occurred, however, did not differ: on the date of the accident, the tractor Mr. Davis was driving began to tilt and roll over, and Mr. Davis was forced to dismount from the tractor as a conse-quencé. Moreover, we agree that Mr. Gui-dry’s detailed account of the accident does appear to be somewhat suspect, as he acknowledged that the tractor rolled down the levee and that when Mr. Davis dismounted, he dismounted “down the levee,” which would have been below the tractor. Considering the size of the tractor, gravity, and Mr. Guidry’s viewpoint (at the top of the levee), the evidence supports the workers’ compensation judge’s finding that Mr. Guidry’s account of the accident was less than credible and insufficient to rea *930 sonably controvert Mr. Davis’s claim for benefits. Furthermore, although the record clearly indicates the employers’ termination of Mr. Davis’s benefits was based on his alleged violation of La. R.S. 23:1208, we further find that the inconclusive medical report of Dr. Nutik could not justify the employers’ action of terminating Mr. Davis’s benefits. Accordingly, we find no manifest error in the workers’ | ^compensation judge’s assessment of penalties and attorney fees against the employers in this matter.
CONCLUSION
Based on a thorough and detailed review of record before us, we find no manifest error in the workers’ compensation judge’s award of benefits or assessment of penalties and attorney fees in this matter. Accordingly, we affirm. All costs of this appeal are assessed to the appellants, New Line Environmental Systems, Inc. and Canal HR.
AFFIRMED.

. According to La. R.S. 23:1761(7) and (8), in the chapter for Unemployment Compensation, “PEO” stands for "Professional Employer Organization” and means any person that offers professional employer services pursuant to a professional employer services agreement by which tire PEO will, upon execution of the agreement, co-employ a substantial part of a client’s workforce and undertake specified responsibilities as an employer for all covered employees that are co-employed by the agreement between the PEO and the client.

. The certification letter accompanying the records from the Interim LSU Public Hospital is dated February 24, 2015.

. The employers submitted a copy of a report from Dr. Gordon P. Nutik, an orthopedic surgeon who performed an independent medical examination of Mr. Davis at the request of the employers. In his report, Dr. Nutik concluded ‘‘[i]t is my opinion that Mr. Davis should have progressed further in his recovery from a possible soft tissue injury, however evaluation at this time was limited because of the apparent inconsistencies noted at the time of the exam."