# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

NO. 2020 CA 0161

ALICIA ALVIS

VERSUS

PENINSULA GAMING PARTNERS, LLC

Judgment Rendered: **NOV 1 2 2020**

* * * * *

On Appeal from the
Office of Workers' Compensation, District 9
In and for the Parish of Terrebonne
State of Louisiana
Trial Court No. 18-03324

Honorable Elizabeth Lanier, Workers' Compensation Judge Presiding

* * * * *

| | |
|---|---|
| Jim S. Hall<br>Metairie, LA | Attorney for Plaintiff-Appellant,<br>Alicia Alvis |
| Elizabeth Lynn Finch<br>Metairie, LA | Attorney for Defendant-Appellee,<br>Peninsula Gaming Partners, LLC |

* * * * *

BEFORE: HIGGINBOTHAM, THERIOT, AND WOLFE, JJ.

**HIGGINBOTHAM, J.**

In this workers' compensation proceeding, the claimant appeals the portions of the judgment of the workers' compensation judge ("WCJ"), ordering that the employer is not responsible for treatment or expenses related to the claimant's L5-S1 disc herniation and ordering that the claimant is not entitled to penalties, attorney fees, or costs.

## FACTS AND PROCEDURAL HISTORY

On June 21, 2012, Alicia Alvis was employed by Peninsula Gaming Partners, LLC ("Peninsula Gaming") and working as a hostess for Amelia Belle Casino when she tripped on an uneven area in the floor and immediately felt tightness in her right knee. Mrs. Alvis reported her injury to her supervisor and went that day to Assumption Community Hospital, complaining of right knee pain. At the hospital, Mrs. Alvis was diagnosed with a strained right knee. Peninsula Gaming found the injury compensable and paid for treatment for Mrs. Alvis's knee, including two surgeries.

On May 11, 2018, Mrs. Alvis filed a disputed claim for compensation, seeking payment for treatment recommended by her neurologist, Dr. Donald Gervais, for lower back pain she contends was caused by the work accident. On April 1, 2019, Mrs. Alvis amended her claim, seeking reimbursement for medical expenses from "various health care providers for her low back injury." Additionally, in her amended claim, Mrs. Alvis contended that Peninsula Gaming was arbitrary and capricious in its denial of medical treatment for her back and sought penalties and attorney fees pursuant to the Louisiana's Workers' Compensation statute. Peninsula Gaming answered, arguing that Mrs. Alvis's back injury was not related to the June 21, 2012 work accident and denying that it was arbitrary and capricious in denying benefits.

2

The matter proceeded to trial before the WCJ on August 15, 2019. Mrs. Alvis testified at the hearing, and both parties submitted numerous medical records as well as the deposition of Dr. Alexis Waguespack, who treated Mrs. Alvis, and the deposition of Dr. Daniel Trahant, who performed a second medical opinion ("SMO") of Mrs. Alvis. After taking the matter under advisement, the WCJ signed a judgment on November 18, 2019, finding that some aspects of Mrs. Alvis's back injury were related to the work accident but that Mrs. Alvis did not meet her burden of proving that her L5-S1 disc herniation was caused by the work accident. Specifically, the WCJ ordered the following that is relevant to this appeal:

> IT IS ORDERED this Court finds the employee did meet her burden of proof by a preponderance of the evidence to establish the muscular issues in her back are related to her gait issues and are thus caused by the work accident

> IT IS ORDERED this Court finds the employee did not meet her burden of proof by a preponderance of the evidence to establish the L5-S1 herniation was caused by the work accident.

> IT IS ORDERED this Court finds the employee is entitled to all reasonable and necessary medical expenses related to the treatment for the IT Band, peroneal nerve, right thigh/quadriceps atrophy, L3-L4 denervation and muscle innervation, and muscular issues in the back attributed to employee's gait.

> IT IS ORDERED the employer is responsible for the reimbursement of all medical expenses and out of pocket expenses related to the treatment for the IT Band, peroneal nerve, right thigh/quadriceps atrophy, L3-L4 denervation and muscle innervation, and muscular issues in the back attributed to employee's gait.

> IT IS ORDERED the employer is not responsible for the treatment or medical expenses for the L5-S1 herniation.

> IT IS ORDERED the employer reasonably controverted the claim for the back and thus is not assessed penalties, attorney fees or costs.

It is from this judgment that Mrs. Alvis appeals contending that: 1) she met her burden of proof by a preponderance of the evidence that her L5-S1 disc herniation was caused by the work accident, and 2) she is entitled to penalties, attorney fees,

and costs for the arbitrary and capricious failure of Peninsula Gaming to reasonably controvert the claim for her back injuries.

## LAW AND ANALYSIS

In a workers' compensation case, as in other cases, the appellate court's review of factual findings is governed by the manifest error or clearly wrong standard. **Smith v. Louisiana Dept. of Corrections**, 93-1305 (La. 2/28/94), 633 So.2d 129, 132. The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. **Mart v. Hill**, 505 So.2d 1120, 1127 (La. 1987). When factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the findings of the trier of fact, for only the fact finder can be aware of the variations in demeanor and tone that bear so heavily on the listener's understanding and belief in what is said. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Thus, "[i]f the [fact finder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." **Sistler v. Liberty Mut. Ins. Co.**, 558 So.2d 1106, 1112 (La. 1990). Consequently, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. **Bolton v. B E & K Const.**, 2001-0486 (La. App. 1st Cir. 6/21/02), 822 So.2d 29, 35.

*Burden of Proof/Causation*

In her first assignment of error, Mrs. Alvis contends that the WCJ erred in finding that she did not meet her burden of proving that her L5-S1 disc herniation was caused by the work accident.

The Louisiana Workers' Compensation Act provides coverage to an employee for personal injury caused by an accident arising out of and in the course

4

of his employment. La. R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme, as adopted by the legislature, and must establish that the accident was employment-related, that the accident caused the injury, and that the injury caused the disability. **Hirstius v. Tropicare Service, LLC**, 2011-1080 (La. App. 1st Cir. 12/21/11), 80 So.3d 1215, 1216.

Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that she sustained an injury. **Holiday v. Borden Chem.**, 508 So.2d 1381, 1383 (La. 1987). Next, she must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. **West v. Bayou Vista Manor, Inc.**, 371 So.2d 1146, 1147 (La. 1979). Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. **DeGruy v. Pala, Inc.**, 525 So.2d 1124, 1132 (La. App. 1st Cir.), writ denied, 530 So.2d 568 (La. 1988).

Although procedural rules are construed liberally in favor of workers' compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. **Buxton v. Iowa Police Department**, 2009-0520 (La. 10/20/09), 23 So.3d 275, 283.

At the hearing, Mrs. Alvis testified that, on June 21, 2012, she injured her knee when she fell at work, and thereafter, she went to Assumption Hospital where she was diagnosed with a strained right knee. Mrs. Alvis said that she mentioned

5

low-back pain to Assumption Hospital; however, she was not sure if that information was in the medical records from the hospital. Mrs. Alvis stated that, in October 2012, her orthopedic surgeon, Dr. Pamela Petrocy, performed surgery on her right knee. According to Mrs. Alvis, sometime thereafter, Dr. Petrocy left her practice, and she began seeing Dr. Neil Maki. Dr. Maki also performed surgery on her knee in July 2016. During the hearing, Mrs. Alvis agreed that the first time she mentioned low back pain was to Dr. Petrocy in 2014. Mrs. Alvis acknowledged that, in October 2016, she was involved in a motor vehicle accident wherein a vehicle swerved into her and she was forced into a ditch. Mrs. Alvis testified that she "aggravated" her back injury due to the accident, and she sought treatment for her injury.

In addition to the testimony of Mrs. Alvis, both parties introduced extensive medical records of Mrs. Alvis. A review of the medical evidence reveals that Mrs. Alvis mentioned low-back pain for the first time post-accident in July 2014 at an appointment with Dr. Petrocy. This was approximately two years after the work accident. At that appointment, Mrs. Alvis mentioned stepping on an uneven surface and tweaking her knee. Dr. Petrocy said "due to the way [Mrs. Alvis] has been walking incorrectly for so long, she has hurt her back as well."

After Dr. Petrocy left her practice, Mrs. Alvis began seeing Dr. Maki at the orthopedic clinic. Dr. Maki referred her to Dr. Gervais for an EMG. In April 2017, Dr. Gervais performed the EMG. Dr. Gervais's review of Mrs. Alvis's EMG revealed L3 and L4 radicular disease as well as right L5 and S1 radicular changes. Dr. Gervais stated that "her back pain as well as knee and leg pain are all related to the same injury that she suffered in 2012 when she reportedly fell with one leg into a covered hole in the floor on the Amelia Bell[e] Casino in June 2012." On January 31, 2018, Mrs. Alvis had a follow-up appointment with Dr. Maki to re-evaluate her right knee. Dr. Maki in his notes stated: "Mrs. Alvis did not complain of back pain

6

here until after her right knee arthroscopy on 7/7/16." However, Dr. Maki "agree[d] with Dr. Gervais that her back complaints are related to her [work] injury."

On February 14, 2018, Mrs. Alvis had an appointment with Dr. Waguespack, who specializes in the spine, where her chief complaint was low-back pain. Dr. Waguespack ordered an MRI of the lumbar spine and found right-sided L5-S1 disc herniation. Based on the history provided by Mrs. Alvis, Dr. Waguespack attributed the disc herniation to Mrs. Alvis's work injury. However, Dr. Waguespack acknowledged that the disc herniation could have been caused by an unreported motor vehicle accident.

On September 19, 2018, Dr. Trahant performed an SMO of Mrs. Alvis, which involved a medical examination as well as a review of all of Mrs. Alvis's medical records related to her knee injury and complaints of back pain. In his report, Dr. Trahant opined that Mrs. Alvis's right knee strain caused her to ambulate differently, and that, as well as her being obese, were factors in her right lumbar pain. Dr. Trahant determined that her pain was muscular rather than radicular or neurological. Dr. Trahant stated in his report, "I do not feel that there is any evidence of any lumbar pathology as related to her work related incident, nor do I feel that she has any lumbar radiculopathy associated with that incident. I do not feel that there is any neurological process or impairment related to this work-related injury."

Dr. Timothy Finney with Southern Orthopedic Specialists saw Mrs. Alvis three times from July 24, 2013 to August 30, 2017. Dr. Finney wrote a letter regarding his care of Mrs. Alvis wherein he agreed with Dr. Trahant's report that she is stable as far as her lumbar spine is concerned and that she is at maximal medical improvement.

Based on the testimony of Mrs. Alvis as well as the medical evidence presented, we conclude that the records support the WCJ's conclusion that Mrs. Alvis did not establish a causal connection between her work accident and her L5-

S1 disc herniation by a preponderance of the evidence. The medical records indicate that most of the doctors who examined Mrs. Alvis attributed her back pain to her altered gait caused by her knee injury. However, Dr. Trahant determined that Mrs. Alvis's back injury was muscular and found that no neurological process or impairment was related to her work injury. Dr. Finny agreed with Dr. Trahant's assessment of Mrs. Alvis's lumbar spine. Further, Dr. Waguespack acknowledged that an unreported motor vehicle accident could have contributed to her disc herniation. Under these circumstances, the WCJ's decision, finding that Mrs. Alvis proved muscular issues related to her back were caused by the work accident but failed to prove causation by a preponderance of the evidence regarding the L5-S1 disc herniation, was entirely reasonable and may not be disturbed by this court.

*Penalties and Attorney Fees*

In her second assignment of error, Mrs. Alvis contends that she is entitled to penalties, attorney fees, and costs for the arbitrary and capricious failure of Peninsula Gaming to reasonably controvert the claim for her back injuries. Specifically, Mrs. Alvis argues that, at the time she filed her disputed claim for compensation for injury to her back, Peninsula Gaming had no medical evidence to support their position that her back injury was not related to the work accident. Further, Mrs. Alvis points out that the WCJ found that some aspects of her back injury were related to the work accident.

Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. **Quave v. Airtrol, Inc.,** 2011-1182 (La. App. 1st Cir. 6/8/12), 93 So.3d 733, 740. Pursuant to La. R.S. 23:1201(F), an employer or insurer may be assessed with penalties and attorney fees

8

for failure to timely pay weekly indemnity or medical benefits where the employer or insurer has failed to reasonably controvert the claim. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the employee. **Alexander v. Sanderson Farms, Inc.,** 2008-2225 (La. App. 1st Cir. 5/8/09), 17 So.3d 5, 16.

Applying these precepts to the case before us, we find no error in the WCJ's conclusion that Peninsula Gaming reasonably controverted Mrs. Alvis's claim for benefits for her back. Mrs. Alvis's initial injury was to her knee, and Peninsula Gaming has paid workers' compensation benefits and medical benefits related to her knee since the accident. This included surgeries, physical therapy, and other treatments. Mrs. Alvis did not mention back pain in the medical records until two years after the accident. In addition, Mrs. Alvis acknowledged seeking treatment for her back after a motor vehicle accident in 2016. After considering the two-year period between the accident and Mrs. Alvis's complaint of back pain, Mrs. Alvis's motor vehicle accident, and the medical records introduced into evidence, we find a bona fide dispute existed as to Mrs. Alvis's entitlement to benefits for her back. Therefore, we find no error in the WCJ's decision not to assess attorney fees, penalties, or costs against Peninsula Gaming.

## CONCLUSION

For the foregoing reasons, we affirm the November 18, 2019 judgment of the Workers' Compensation Judge. All costs of this appeal are assessed to plaintiff-appellant, Mrs. Alicia Alvis.

**AFFIRMED.**

9