STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 1202

ANTOINE DUFRENE

VERSUS

LOUISIANA WORKERS' COMPENSATION
CORPORATION AND NORTHSHORE EMS

*Judgment Rendered:* **MAY 1 1 2020**

********

On Appeal from the Office of Workers' Compensation
Administration, District 6, Louisiana
Docket No. 17-06527
Honorable Jason G. Ourso, Workers' Compensation Judge Presiding

********

| | |
|---|---|
| Claiborne W. Brown<br>Mandeville, Louisiana | Counsel for Plaintiff/Appellant<br>Antoine Dufrene |
| Jeffrey J. Warrens<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>Northshore EMS, LLC and<br>Louisiana Workers' Compensation<br>Corporation |

********

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**LANIER, J.**

Claimant, Antoine Dufrene, challenges the decision of the Office of Workers' Compensation ("OWC") judge, dismissing his claim against appellees, Northshore EMS, LLC ("Northshore") and Louisiana Workers' Compensation Corporation ("LWCC"), having found that he did not carry his burden of proof that he suffered injuries due to a work-related accident. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The underlying action arises out of a workers' compensation claim brought by Dufrene for low back and right knee/leg pain he allegedly sustained in an altercation on July 30, 2017, involving a patient while on duty as an emergency medical technician ("EMT") for Northshore.[1] Dufrene began working as an EMT in August 1987 and had several other jobs before starting with Northshore in August 2013. Dufrene was terminated by Northshore effective September 1, 2017.

Thereafter, Dufrene filed a disputed claim for compensation against Northshore and its insurer, LWCC. On April 10, 2019, the matter was submitted to the OWC judge for decision based on documentary evidence. After the parties stipulated that there would be no live testimony produced at trial, the OWC judge noted, "I'm going to take a break and review some of the exhibits a few more times and come back and give you my ruling." The OWC judge subsequently found that Dufrene had failed to meet his burden of proving a compensable accident, dismissing, with prejudice, all of Dufrene's claims. Dufrene then filed a timely motion for new trial, which was denied by the OWC judge.

---

[1] The police report states the date was July 29, 2017; however, all other documents refer to July 30, 2017, as the date of the incident.

This appeal by Dufrene followed. In his sole assignment of error, Dufrene alleges that the OWC judge was manifestly erroneous in finding that he failed to establish a compensable injury under La. R.S. 23:1021, *et seq.*

## DISCUSSION

At issue in the instant case is whether Dufrene proved, by a preponderance of the evidence, that a work-related event occurred and caused his injuries. On appeal, Dufrene acknowledges the discrepancies in the accounts of the altercation as well as his ability to attribute his injuries to said altercation, but argues that they are not material in that they do not "cause serious doubt as to the veracity of whether ... Dufrene was involved in an 'accident' as defined by La. R.S. 23:1021, which resulted in his injuries." He argues, however, that despite having a pre-existing degenerative condition in his lower back, the uncontroverted evidence shows that prior to his shift on July 30, 2017, he exhibited no symptoms of any lower back injury that impacted his ability to work in any way.

At oral argument, counsel for Dufrene stated that while they do not challenge the OWC judge's finding that Dufrene did not fall to the ground, they do challenge the OWC judge's failure to find that Dufrene intervened in the altercation between his patient and the other woman, that Dufrene was struck in the face by the woman, and that Dufrene's injuries manifested themselves almost immediately. Counsel maintained there was no reasonable basis for rejecting otherwise sound evidence that Dufrene's injuries were linked to the event.

In response, Northshore and LWCC argue that the witness testimony directly contradicted Dufrene's version of the events; therefore, a reasonable factual basis for the OWC judge's ruling exists and the ruling must stand. Moreover, in his response at oral argument, counsel for Northshore and LWCC acknowledged that while Dufrene was struck in the face by the woman during the altercation, there is no medical evidence in the record to support Dufrene's argument that being struck

3

in the face culminated in his need for medical care associated with lower back and knee/leg pain some four days later. Counsel for Northshore and LWCC added that this was the first time that Dufrene had conceded that his lower back and knee pain was not caused by a fall to the ground.

The Louisiana Workers' Compensation Act provides coverage to an employee for personal injury caused by an accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An employee must establish that the accident was employment related, that the accident caused the injury, and that the injury caused the disability. **Hirstius v. Tropicare Service, LLC**, 2011-1080 (La. App. 1 Cir. 12/21/11), 80 So.3d 1215, 1216.

Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. *Id.* A worker's testimony is sufficient to discharge the burden of proving an accident, provided that two elements are first satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances surrounding the alleged incident. **Bruno v. Harbert Intern. Inc.**, 593 So.2d 357, 361 (La. 1992); **Vargas v. Petrin Corp.**, 2012-1212 (La. App. 1 Cir. 3/22/13), 115 So.3d 483, 487. Corroboration of the employee's testimony may be provided by the testimony of fellow workers, spouses, or friends, or by medical evidence. **Bridges v. Gaten's Adventures Unlimited, L.L.C.**, 2014-1132 (La. App. 1 Cir. 4/2/15), 167 So.3d 992, 998.

"Accident" is defined in La. R.S. 23:1021(1) as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." Whether a claimant has carried his or her burden of proof and

4

whether testimony is credible are questions of fact to be determined by the trier of fact and subject to the manifest error standard of review. **Allman v. Washington Parish Police Jury**, 2004-0600 (La. App. 1 Cir. 3/24/05), 907 So.2d 86, 88.

An employee in a workers' compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. See **Walton v. Normandy Village Homes Ass'n, Inc.**, 475 So.2d 320, 324 (La. 1985). Where, as here, the employee suffered from a preexisting medical condition, he may still prevail if he proves that the accident "aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed." *Id.* In **Walton**, the Louisiana Supreme Court recognized the existence of a presumption to aid plaintiffs in cases involving a preexisting condition:

> In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. A claimant's disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.
>
> Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Correlatively, when an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability.

**Walton**, 475 So.2d at 324-325 (citations omitted).

5

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. **Banks v. Industrial Roofing & Sheet Metal Works, Inc.**, 96-2840 (La. 7/1/97), 696 So.2d 551, 556. As an appellate court, we cannot set aside the factual findings of an OWC judge unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). **Stobart v. State through Dept. of Transp. and Development**, 617 So.2d 880, 882 (La. 1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness's testimony must be given "great deference" by the appellate court. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Thus, when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, although the appellate court may feel its own evaluations and inferences are as reasonable. *Id.*; see also **Crawford v. Pontchartrain Materials**, 2006-1780 (La. App. 1 Cir. 3/28/07), 960 So.2d 946, 950.

Dufrene's January 29, 2018 deposition is part of the record evidence. According to Dufrene's testimony, he and his partner, Randall McKenzie, received a call on the morning of July 30, 2017, for an unresponsive female. When they arrived on the scene, the Bogalusa Fire Department was already there. Upon entering the apartment, Dufrene was told by one of the firemen that there were two women inside, one laying on the ground and another one who was "intoxicated, questionably irate." When questioned about the event, Dufrene recalled what happened next as follows:

A.     ... I walked into the apartment.

Some of the fire department was still in there. I noticed a female laying [sic] face down on the floor. The other female was kind of circling her. She tried to come up to me and kind of get us out of there because she didn't want us to be there in the first place. And I went -- trying to basically question her, I can tell that she seemed very intoxicated with the slurred speech and just her mannerisms. So I walked around the sofa to the patient, and I was trying to arouse her. And the other woman came up to me and, you know, kind of nudged me out the way and said, "I'll get her up." And she starting hitting her in the arm.

And I kind of pushed her away. I said, "You can't do that."

So she -- she kind of got up, and then I continued to try and arouse her. She finally started waking up. And when she finally woke up, she got irate that the other female was still there and she wanted her out of the apartment, which made the other female get even more irate.

My patient stood up. The other female walked around -- around the sofa and started coming towards it all the while. I don't remember what she was saying, but you could tell it was very offensive. She was angry. And we had another little fireman that was between me and her. She circled him, and I got in front of my patient to protect her because I figured, you know, they were about to fight. And she took a swing. The other female took a swing at my patient. Since she was right here, I went like this, and she punched me instead.

Q. Okay.

A. And when she punched me, I reacted to --

Q. Where did she hit you?

A. Right -- right side of my face.

Q. And your reaction was what?

A. My reaction, I went to subdue her, the woman that was assaulting her. And when I grabbed her, we kind of spun, kind of twisted and fell to the ground.

Q. How big was the other woman?

A. Probably about -- I guess she was about my height, about five nine, I guess, probably about 130, 140 pounds.

Q. And you weighed what at the time?

A. 220.

Q. What you weigh now roughly?

7

A.     Yeah.

Dufrene continued, noting that the Bogalusa Police were called to the scene and that the woman who had hit him was later detained and arrested. When asked about his discussions with the police on the scene, Dufrene indicated that at the time, he did not feel that he had injured his back. In a statement provided to the police on the day of the event, Dufrene simply stated that the woman pushed him and he stepped between his patient and the woman in an attempt to protect his patient and that the woman struck him on the right side of his face. Dufrene did not report any injuries at that time, nor did he report that he had to subdue the woman and that they fell to the ground.

In a Northshore incident report dated on August 3, 2017, Dufrene reported that he "went to subdue" the woman attacking his patient and that they "fell to the floor" during the altercation. Dufrene added that although his right knee and lower back were stiff the next morning, he believed it would go away. Dufrene's statement in the incident report continued as follows: "By Tues. 8/1/17, the pain in my [right] leg [and] lower back became so severe that I couldn't walk, I had to crawl to do anything. That is when I decided to seek medical treatment in the ER."

Randall McKenzie testified in his deposition that he "was standing right there next to [Dufrene], in the background" when Dufrene was attempting to arouse the patient on the floor. He added that there were also two Bogalusa firefighters present. When asked if there was any physical contact between Dufrene and the other woman on the scene, McKenzie stated "[s]he struck him in the side of the head. She was intentionally ... trying to strike [the patient on the floor], but [Dufrene] intervened and stepped in and she in turn struck him." However, after the woman struck Dufrene, Dufrene asked McKenzie to call dispatch to "get P.D. en route." When asked if he recalled Dufrene grabbing the

8

woman and the two of them twisting and falling to the ground, the following colloquy occurred:

Q    ... Do you remember any of that occurring?
A    No, sir. Honestly, I do not.
Q    Had that occurred, were you in the vicinity close enough to have seen that transpire, had it happened?
A    Yes, sir. I was still in the room with him when all that was transpiring, but that part I do not recall happening because as I aforementioned, after he - after she made contact and struck him, is when he asked me to elicit our dispatch to get P.D. en route.

McKenzie further acknowledged that although he was out the room for about a minute or two, Dufrene never told him about falling to the ground during the altercation, nor did he ever see Dufrene on the ground. McKenzie added that after he and Dufrene left the scene at the apartment, they finished their 48-hour shift, during which Dufrene never complained to him about any physical injuries stemming from the altercation.

Several firefighters who were on the scene were also deposed regarding their recollection of the events. Joseph Ball testified that he entered the room with other firefighters, but exited the room shortly thereafter when the EMTs arrived. He indicated that there were two women present—one was unresponsive but breathing, and the other was on top of her acting erratic. Ball did not witness any altercation or speak with anyone at the scene, but heard "[a]fter the fact ... that there was a physical altercation." Similarly, Mark Cordero testified that he arrived at the scene to find two women present. He stated that once the EMTs arrived, he provided as much information as possible to the EMTs and then went to the ambulance. Cordero added that he did not witness any altercations while at the scene that day.

Graham Wolberecht was the ranking firefighter on the scene. He agreed that the room that they were all in was approximately "15 by 15 [feet] square." Wolberecht recalled that there were two women in the room, one on the floor and a

9

second woman who was being "somewhat combative" with woman on the floor. When asked if the "somewhat combative" woman physically attacked anyone in the room, Wolberecht stated that "[s]he might have touched [Dufrene]. And that's it." He did not recall anyone falling to the ground, adding, "[b]ut I mean, we'd go in and out and I may have been helping with the stretcher but, I thought I was pretty much in there ... most of the time."

With regard to his medical care following this event, Dufrene was seen by Dr. Harry F. Jasmin, an internal medicine physician who had been treating Dufrene since February 2017 for a drug addiction that went back as far as 2015. According to Dr. Jasmin, Dufrene had been seeing another physician for Suboxone treatment, a treatment used to treat patients with an addiction to opiates and opioids. Dufrene advised Dr. Jasmine that he had issues with opiates since he was 25 years old and had been in treatment for five years. When asked if Dufrene had described the circumstances surrounding his drug use to him, Dr. Jasmin responded as follows:

> Let me read my note for you ... what I put. I put, "Case of a 49 [year] old with a more or less 20-year history of opioids dependence and abuse. History of chronic lumbalgia." I did put that in there. "History of chronic lumbalgia," which is back pain. ... "The drug of choice, OxyContin. History of ... Suboxone maintenance ... over the last five years. Patient previous Suboxone provider ... withdraws from Suboxone abuse treatment." In other words, ... whoever he was going with no longer provided Suboxone treatment. "Admit to Suboxone maintenance. Continue with treatment."

Following the event on July 30th, Dufrene saw Dr. Jasmin on August 1, 2017, for a regularly scheduled appointment. At that time, Dufrene made no mention of the altercation on July 30th, nor did he note any recent back or knee injury, increase in back pain, or knee pain. However, that same day, sometime after 4:00 p.m., Dufrene was also seen in the emergency room of the Lakeview Regional Medical Center ("Lakeview Regional"), complaining of posterior right thigh, buttock, and lower leg pain that had begun 3-4 days prior. He reported that his right knee "buckled" as he was trying to get out of his vehicle. He did not

mention the altercation on July 30th or that he had sustained a lower back injury. Moreover, there was no mention of Dufrene's pain being "so severe" that he could not walk or that he "had to crawl to do anything." When asked if he reported the July 30th altercation to the medical providers at Lakeview Regional, Dufrene stated that "at that time ... [he was] still trying to figure out why [he was] hurting."

On August 2, 2017, Dufrene was seen in the St. Tammany Parish Hospital emergency room ("St. Tammany"). Dufrene complained of acute/chronic right lumbar back pain that radiates down his right leg. In the "History/Chief Complaint" section of the record from St. Tammany, it is noted that Dufrene indicated he "lifted several patients over the weekend," but denied any specific trauma or fall. However, later in the record, under a section entitled "APC/Resident Notes," the following is found: "Pt reports heavy lifting and falling over patient last week, he is a paramedic."

We also note that while at St. Tammany, Dufrene reported a "history of degenerative disc disease as well as a herniated disc." However, when asked about his history of back disease, Dufrene denied ever being diagnosed with a herniated disc and did not recall telling the medical providers at St. Tammany that he had degenerative disc disease. It is interesting to note, however, that as reported on a LWCC's Second Injury Board Knowledge Questionnaire dated August 21, 2013, Dufrene indicated he suffered from a "ruptured or herniated disc" and further described his condition as "herniated disc/degen disc" that was diagnosed in 1998. Moreover, there are subsequent references contained in other LWCC Questionnaires noting that in 2014, Dufrene was being treated for a "degenerative disc," and in 2015, he was in pain management for a "bulging disc/pinch nerve."

According to the record, Dufrene next saw Dr. Jason Rudd, an orthopedic surgeon, in connection with his back pain. On August 7, 2017, Dufrene reported to Dr. Rudd that on July 30th, "a bystander was trying to attack a person that he was

11

getting on a stretcher at which point he had to help 'take down the bystander.'" He indicated the he twisted his back[2] at that time and felt a little "twinge," but "for the most part did not hurt to the next day." He described the pain as severe right lower back pain radiating down his right leg. Dufrene indicated that it was a constant pain that worsened when he moved. Dufrene returned to see Dr. Rudd on August 30, 2017, at which there was no improvement with his symptoms.

Dufrene returned to see Dr. Jasmine on September 1, 2017. Dr. Jasmin's notes do not contain any reference to Dufrene's back injury. However, according to Dr. Jasmin, Dufrene "volunteered that he had been … administered some opiate meds while in the ER. And during that same visit, he told me that he's being -- 'Patient is being evaluated by neurosurgery,' back -- he told me that 'back surgery is likely.'"

The last medical note in the record is from Dr. John B. Logan, an orthopedic surgeon, who saw Dufrene on February 6, 2019. According to Dr. Logan, Dufrene reported being "attacked by a 150 pound combative female" and developing significant low back pain. Dufrene was "frustrated with his ongoing symptomology and inability to work" and requested that Dr. Logan review his history and recommend treatment options.

Based on the numerous inconsistencies in the testimony, we find that "serious doubt" exists and that there is a lack of corroborating evidence in the form of testimony or medical records in this case. The OWC judge was presented with several different versions of what happened during the altercation on July 30, 2017. Dufrene's reporting of the altercation, as well as his alleged resulting injuries, was very inconsistent from the day of the event. Furthermore, there are

_____

[2] Although Dr. Rudd's August 7, 2017 office note says Dufrene twisted his "hand" in the altercation, his August 30, 2017 office note contains the same description except that it refers to Dufrene twisting his "back." As there are no other references in the record to any alleged injuries to Dufrene's hand stemming from the July 30th altercation, and for the sake of argument, we believe the August 7, 2017 reference to "hand" to be a clerical error.

12

numerous discrepancies between the medical evidence and Dufrene's testimony, thereby calling into question Dufrene's credibility.

It is apparent from the ruling below that the OWC judge believed that there was no "accident" as defined in La. R.S. 23:1021(1), because although there was an "unexpected ... identifiable ... event" there was no causally related injury produced at the time. In the absence of manifest error, we are charged with affirming the OWC judge's ruling. Given the great weight afforded to the OWC judge with respect to evaluation of witnesses and credibility determinations and in light of the record evidence to the contrary, we cannot say that the OWC judge erred in finding that Dufrene failed in his burden of proving a causal link between the July 30, 2017 event and his subsequent disabling injury.

## DECREE

For the above and foregoing reasons, we affirm the April 22, 2019 judgment and assess all costs associated with this appeal against claimant, Antoine Dufrene.

**AFFIRMED.**